EXHIBIT B

**EXHIBIT B**

# S U R P L U S   L I N E S   N O T I C E

## FLORIDA

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**



**Endurance American Specialty Insurance Company**
**16052 Swingley Ridge Road**
**Suite 130**
**St. Louis, Missouri 63017**
**Phone: 636-681-1220**
**Fax:     636-681-1221**

# HEALTHCARE UMBRELLA LIABILITY POLICY
# DECLARATIONS

Policy No: HLC10006856901

Replaces:  HLC10006856900

Producer: Marsh, Inc.

Address: 3560 Lenox Road, Suite 2400
Atlanta, GA 30326

**In consideration for the payment of premium and subject to all of the provisions of this policy, we agree to provide to you the insurance as stated in this policy.**

**Item 1**   **Named Insured:** Baptist Health Care Corporation

**Mailing Address of Named Insured:** 1717 North E Street, Suite 402
Pensacola, FL 32501

❑ Individual                     ☒ Organization
❑ Partnership/Joint Venture      ❑ Limited Liability Company
❑ Trust

**Item 2**   **Policy Period:** From:  April 15, 2016        To:  April 15, 2017

12:01 A.M Standard Time at the address shown in item 1, above.

**Item 3**   **Limits of Liability:**

(a) U.S. $25,000,000    Each Occurrence or Medical Incident Limit
(b) U.S. $25,000,000    General Aggregate Limit
(maximum limit for all Occurrences & Medical Incidents paid by this Policy)
(c) Retained Limit      $ 50,000

**Should any single event or accident result in both an occurrence and a medical incident for which coverage is provided by the terms and conditions of the coverage parts of this Policy, our total liability for such single event shall not exceed the amount set forth in item 3(a), above.**

**NOTE – SEE ENCLOSED NOTICE FOR "SURPLUS LINES NOTIFICATION"**



**Endurance American Specialty Insurance Company**
16052 Swingley Ridge Road
Suite 130
St. Louis, Missouri 63017
Phone: 636-681-1220
Fax:      636-681-1221

## HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY DECLARATIONS
### (Continued)

**Item 4**  **Premium for Policy**

Premium:              $ 422,100

Minimum Earned Premium:      25%

☐ You have elected to purchase coverage offered under the Terrorism Risk Insurance Extension Act as amended and reauthorized in 2007. The charge for this coverage is $ 0,000 and is not included in the Premium as stated in item 4.

☒ You have not elected to purchase coverage offered under the Terrorism Risk insurance Extension Act as amended and reauthorized.

☐ The Terrorism Risk Insurance Extension Act as amended and reauthorized in 2007 does not apply.

**Item 5**  Retroactive Date (only applicable to claims made coverage):

Lead $20,000,000 limit:
January 1, 1986   and various as per Named Insured Extension Endorsement
April 15, 2002    General Liability and Employee Benefits Liability

Top $5,000,000 limit:    April 15, 2011

If no date is shown, we will consider the umbrella retroactive date for the Section Coverage - Professional Healthcare Services Liability (including Patient General Liability) -- Claims Made to be the same as the beginning date of this policy.

If this policy provides coverage on a claims made basis to more than one insured and they maintain different retroactive dates, they will be named with their respective retroactive dates on a separate Named Insured and Retroactive Date Endorsement.

**Item 6**  Forms Attached:

See Forms and Endorsements Schedule

**NOTE – SEE ENCLOSED NOTICE FOR "SURPLUS LINES NOTIFICATION"**



**Endurance American Specialty Insurance Company**
**16052 Swingley Ridge Road**
**Suite 130**
**St. Louis, Missouri 63017**
**Phone: 636-681-1220**
**Fax:     636-681-1221**

## HEALTHCARE UMBRELLA LIABILITY INSURANCE POLICY DECLARATIONS
(Continued)

**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY**

**Signed By:**     Authorized Representative

**Date:**     May 26, 2016

**NOTE – SEE ENCLOSED NOTICE FOR "SURPLUS LINES NOTIFICATION"**



## Healthcare Umbrella Liability Policy

**THIS POLICY MAY CONTAIN BOTH CLAIMS MADE AND OCCURRENCE COVERAGES. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.**

**CERTAIN PORTIONS OF THIS POLICY ARE WRITTEN ON A CLAIMS MADE AND REPORTED BASIS. SUBJECT TO THE TERMS AND CONDITIONS OF THIS POLICY, CLAIMS MUST BE FIRST MADE AND REPORTED TO US IN WRITING DURING OUR POLICY PERIOD OR ANY EXTENSION PERIODS.**

**NOTICE: THIS POLICY IS INCOMPLETE UNLESS THE DECLARATIONS, THE SCHEDULE OF UNDERLYING INSURANCE AND THE INSURING AGREEMENT AND THE GENERAL POLICY PROVISIONS, ARE ATTACHED TO OR INCLUDED WITHIN THIS POLICY.**

This Policy has been issued in reliance upon the statements made by you in the information submitted in applying for this insurance. Various provisions in the Policy restrict coverage.

Wherever used in this Policy, the words "You" and "Your" refer to the **Named Insured** shown in the Declarations and the words "We", "Us", and "Our" refer to Endurance American Specialty Insurance Company, the Company providing this insurance. Other words and phrases in this Policy that appear in **bold** have special meaning. Refer to the Definitions provision in this Section when the meanings are not defined where used.

## SECTION I. INSURING AGREEMENT

Subject always to the Limits of Liability as set forth in the Declarations and Section IV. below, this Policy shall indemnify you in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained in the Underlying Policy(ies) set forth in the Schedule of Underlying Insurance, subject to the premium, limits of liability, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy that may be inconsistent with the Underlying Policy(ies) including any and all endorsements attached hereto. The insurance provided by this Policy will not be broader than the insurance coverage provided by the Underlying Policy(ies). Any restrictive Policy terms and/or conditions that apply to the Underlying Policies that are in excess of the Underlying Policy(ies) but underlying to this Policy, will also apply to this Policy unless amended by endorsement.

### A.     Umbrella Claims Made Professional Liability

**We** will indemnify you, subject to the Limits of Liability set forth in the Declarations, for **Ultimate Net Loss**, including **Defense Costs and Expenses** in excess of the **Applicable Underlying Insurance,** which you become legally obligated to pay as a result of a Claim alleging a **Medical Incident**, provided always that:

   1.  such Claim is first made against you during the Policy Period or any applicable Extended Reporting Period; and

   2.  notice of such Claim is given to us in accordance with the terms of this Policy.

**B.**     **Umbrella Occurrence General Liability**

**We** will indemnify you, subject to the Limits of Liability set forth in the Declarations, for **Ultimate Net Loss**, including **Defense Costs and Expenses** in excess of the **Applicable Underlying Insurance**, which you become legally obligated to pay as a result of an Claim alleging **Bodily Injury, Property Damage or Personal or Advertising Injury** caused by an **Occurrence**; provided always that:

1. such **Bodily Injury, Property Damage or Personal or Advertising Injury** occurs during the Policy Period; and

2. notice of such Claim is given to us in accordance with the terms of this Policy.

We shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against you upon exhaustion of the applicable limits of liability of the Underlying Policy(ies).  If we have exercised such right, we may withdraw from the defense and tender the defense to you upon exhaustion of the applicable Limits of Liability under this Policy.  If we do not exercise the right to assume charge of such defense or settlement, or if the applicable limits of the Underlying Policy(ies) are not exhausted, we shall have the right and shall be given the opportunity to associate effectively with you or the Underlying Insurer or both, in the defense and control of any claim or suit likely to involve this Policy.  In such events, you and the Underlying Insurer shall cooperate in the defense of such claim or suit with us.

You shall not settle any claim or suit for an amount within the Limit of Liability or incur any expense without our prior written consent.

In return for the premium indicated herein, the Policy agreed upon shall be subject to the following General Conditions, Exclusions and Special Conditions included below, and the Declarations ('this Policy').

## SECTION II. GENERAL POLICY PROVISIONS

All coverage part(s) of this Policy are subject to the following General Policy Provisions:

**1.**     **Limits of Liability**

**A.**     Our liability for **ultimate net loss** under this Policy, regardless of the number of persons or organizations who are **Insureds**, the number of coverages provided by the attached Coverage Part(s), or the number of losses or claims made or **suits** brought against any and all **Insureds**, shall be determined as follows:

**(i)**     The Occurrence Limit set forth in Item 3 (a) of the Declarations is the most we will pay for any one **occurrence** or **medical incident**.  Should any single event result in both an **occurrence** and a **medical incident** for which coverage is provided by the terms and conditions of the coverage parts of this Policy, our total

liability for such single event shall not exceed the amount stated as the Occurrence Limit in Item 3(a);

**(ii)** Subject to paragraph **(i)** above, our liability for all **ultimate net loss** arising from all **occurrences** or **medical incidents** covered by this Policy, shall not exceed the amount indicated as the Aggregate Limit, as stated in Item 3 (b) of the Declarations.

**B.** If the **underlying amounts** for the **applicable underlying insurance** as shown on the Schedule of Underlying Insurance are reduced or exhausted due to payment of covered losses, claims or **suits**, subject to our Policy's Coverage Part(s); Definitions; Exclusions; Conditions and other terms, our limits will apply:

**(i)** excess of the reduced **underlying amounts** or
**(ii)** in place of **underlying amounts** that are exhausted; but provided these extensions of coverage under Provision B above apply only for:

**(a)** losses, claims or **suits** arising out of **occurrences** that take place during our policy period and such loss, claim or suit is brought in the covered **territory**, if **applicable underlying insurance** listed on the Schedule of Underlying Insurance is provided on an occurrence basis; or

**(b)** losses, claims or **suits** arising out of **occurrences** or **medical incidents** that take place after the Retroactive Date as stated in Item 5 of our Declarations, but before our expiration or termination date, and where the claims are first made and reported to us in writing during our policy period or any **Extended Reporting Period** on our Policy and such loss, claim or suit is brought in the covered **territory**, if **applicable underlying insurance** listed on the Schedule of Underlying Insurance is provided on a claims made basis.

Should any single event or accident result in both an **occurrence** and **medical incident** for which coverage is provided by the terms and conditions of the coverage parts of this Policy, our total liability for such single event shall not exceed the amount set forth in Item 3(a) of the Declarations.

## 2.    Underlying Limits

Any **underlying amounts,** as listed on the Schedule of Underlying Insurance, shall only be reduced or exhausted by the payment of losses, claims or **suits** which would, except for the amount thereof, be covered by this Policy and you shall, in addition thereto, bear all **defense costs and expenses** up until such time as the **underlying amounts** are exhausted.

We may agree that the payment of **defense costs and expenses** shall reduce or exhaust the **underlying amounts** but only if endorsed in writing onto this Policy.

## 3.    Defense Costs and Expenses

We shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against any **insured** upon exhaustion of the **underlying amounts** listed on the Schedule of

Underlying Insurance.  If we have exercised such right, we may withdraw from the defense and tender the defense to you upon exhaustion of the applicable Limit of Liability of this Policy.  We shall not be obligated to investigate, defend or pay any loss, claim or suit nor will we be obligated to pay any **defense costs and expenses** after the applicable Limit of Liability for our Policy has been exhausted by payment of **ultimate net loss**.

We shall also have the right, but not the duty, at our expense, to participate in the defense or settlement of any claim or suit against any **insured** that may affect this Policy.

**Defense costs and expenses** will reduce our Limits of Liability as listed on the Declaration page.

## 4.     Exclusions

This policy shall not apply to:

### A.     Aircraft

Any **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident** arising from ownership, entrustment, maintenance, operation, use, **loading or unloading** of any aircraft.

This exclusion does not apply if such liability is covered by valid and collectible **applicable underlying insurance** listed in the Schedule of Underlying Insurance**.**  However, the insurance provided by our Policy will be no broader than the insurance coverage scheduled as such**.**

### B.     Alcoholic Beverages

Any **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident** for which any **insured** may be held liable by reason of:

 **(i)**  causing or contributing to the intoxication of any person;

 **(ii)**  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

 **(iii)**  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if any **insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### C.     Asbestos and Silica

 **(i)**  Any liability for **property damage**, **bodily injury, personal injury, advertising injury** or **medical incidents**, at any time arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, transportation of or exposure to asbestos or silica products, asbestos or silica fibers or asbestos or silica dust.

 **(ii)**  Any obligation of any **insured** to indemnify or contribute on behalf of any party because of **property damage, bodily injury, personal injury,**

**advertising injury** or **medical incident**, resulting from or contributed to, by the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, transportation of or exposure to asbestos or silica, asbestos or silica products, asbestos or silica fibers or asbestos or silica dust.

**(iii)** Any obligation to investigate, defend or settle any loss, claim or suit against any **insured** which alleges **property damage**, **bodily injury, personal injury, advertising injury** or **medical incident**, resulting from or contributed to, by the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, transportation of or exposure to asbestos or silica, asbestos or silica products, asbestos or silica fibers or asbestos or silica dust.

**D.     Autos**

**(i)** Any **bodily injury, property damage, personal injury, advertising injury** or **medical incident** arising from the ownership, entrustment, maintenance, operation, use, **loading or unloading** of any autos.

Part **(i)** of this exclusion does not apply if such liability is covered by valid and collectible **applicable underlying insurance** listed in the Schedule of Underlying Insurance**.** However, the insurance provided by our Policy will be no broader than the insurance coverage scheduled as such.

**(ii)** Liability imposed on any **insured** under any uninsured/underinsured motorist or automobile no-fault or first party **personal injury** law.

**E.     Care, Custody and Control**

**Property damage** to:

**(i)** personal property being transported by any **insured**;

**(ii)** property of whatsoever nature owned by, used by, loaned by, leased by, rented to or occupied by any **insured**;

**(iii)** personal property used by or in the care, custody or control of any **insured**;

**(iv)** premises any **insured** sells, gives away or abandons, if the **property damage** arises out of any part of those premises; except if the premises are any **insured's work** and were never occupied, rented or held for rental by any **insured**;

**(v)** that particular part of real property on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations if the **property damage** arises out of those operations;

but parts **(iii), (iv)** and **(v)** of this exclusion do not apply with respect to liability of any **insured** under a written sidetrack agreement.

**F.    Contractual Liability**

Any **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident** for which any **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

(i)     assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident** occurs subsequent to the execution of the contract or agreement; or

(ii)    that any **insured** would have in the absence of the contract or agreement.

**G.    Criminal Acts**

Any loss, claim or suit for **bodily injury, property damage, personal injury, advertising injury** or **medical incident** brought about or contributed to by any dishonest or fraudulent act or omission committed by or at the direction of any **insured**; any willful violation of any statute, rule or law or the gaining by any **insured** of any profit, remuneration or advantage to which such **insured** is not legally entitled.  The determination of the applicability of this Exclusion may be established by an admission, final adjudication or finding in a proceeding constituting a claim under the Policy or any proceeding separate from or collateral to the claim.

**H.    Cross Claims and Suits**

Any loss, claim or suit for **bodily injury**, **property damage**, **personal injury, advertising injury,** or **medical incident** which is initiated, alleged, or caused to be brought about by any **insured** covered by this policy against any other **insured** covered by this policy.  This does not apply, however, to any **insured** covered by the Policy who seeks medical professional services provided by another **insured** covered by the Policy.

**I.    Damage to Impaired Property**

Any **property damage** to **impaired property** or property that has not been physically damaged arising out of:

(i)     a defect, deficiency, inadequacy, or dangerous condition in any **insured's product** or any **insured's work**; or

(ii)    a delay or failure by any **insured** or anyone acting on any **insured's** behalf to perform a contract or an agreement in accordance with its terms;

but this exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical damage to any **insured's product** or any **insured's work** after it has been put to its intended use.

**J.**     **Directors & Officers**

Any liability arising from any **wrongful act** of any director or officer of any **insured** in the discharge or performance of their duties as such.

For the purposes of this exclusion, **wrongful act** means any actual or alleged error, misstatement, misleading statement, act or omission, neglect, breach of duty, or breach of contract by any director or officer of any **insured** in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of any **insured**.

**K.**     **Employee Benefits**

Any liability arising out of the administration of any **insured's Employee Benefits** program.

**Employee Benefits** includes but is not limited to:

   **(i)**     group life, health, dental or optical insurance;
   **(ii)**    health maintenance organizations (HMO) or preferred provider organizations (PPO);
   **(iii)**   profit-sharing, savings, employee stock subscription or employee loan programs;
   **(iv)**    pension, retirement or salary continuation plans;
   **(v)**     employee discount, travel or vacation plans; or
   **(vi)**    any similar plan or program.

This exclusion does not apply if such liability is covered by valid and collectible **applicable underlying insurance** listed in the Schedule of Underlying Insurance**.** However, the insurance provided by our Policy will be no broader than the insurance coverage scheduled as such**.**

**L.**     **Employers' Liability**

Any **bodily injury, property damage, personal injury,** or **advertising injury** sustained by:

   **(i)**     any employee of any **insured** arising out of and in the course of employment;
   **(ii)**    any spouse, child, parent, brother, or sister of the employee as a consequence of part (i) of this exclusion above;
   **(iii)**   any employee of any **insured** for which any **insured** is held liable under the provisions of the Merchant Marine Act of 1920 (known as the Jones Act) as amended, the Federal Employees Liability Act as amended or any similar laws;

paragraphs **(i), (ii)** and **(iii)** of this exclusion apply whether any **insured** may be liable as an employer or in any other capacity, unless such liability is covered by valid and collectible

**applicable underlying insurance** listed in the Schedule of Underlying Insurance. However, the insurance provided by our Policy will be no broader than the insurance coverage scheduled as such.

This exclusion applies to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### M.   Employment Practices Liability

Any **bodily injury, property damage, personal injury, advertising injury,** or **medical incident** costs, fines or other liability arising out of:

**(i)**   refusal to employ;

**(ii)**   termination of employment;

**(iii)**   coercion, demotion evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment related practices, policies, acts or omissions; or

**(iv)**   **consequential bodily injury, property damage, personal injury, advertising injury** or **medical incident** as a result of any acts described in parts (i), (ii) or (iii) of this exclusion above.

**(v)**   the National Labor Relations Act (29 U.S.C. 151 et seq.), or related statutes, or any law, statute or regulation of any jurisdiction similar to the foregoing, or arising as a result of a dispute with any labor union or labor organization, including, but not limited to, a lockout, strike, picket line, the hiring of replacement workers, outsourcing or other similar actions, or arising out of a collective bargaining agreement or similar agreement.

This exclusion applies whether any **insured** may be liable as an employer or in any other capacity.

### N.   ERISA

Any violation or alleged violation of the Employee Retirement Income Security Act of 1974 or any amendment or addition thereto or similar provisions of any federal, state, or local law.

### O.   Expected or Intended

Any **bodily injury** or **property damage** expected or intended from the standpoint of any **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

### P.   Known Losses

This Policy excludes coverage for any **medical incident** or **occurrence**, claim, circumstance, event or series of **medical incidents** or **occurrences**, claims, circumstances or events:

(i)   that was the subject, in whole or in part, of any notice to any insurer prior to the inception date of coverage under this agreement;

    (ii)  that was known to any risk management, legal or insurance personnel, peer review committee or their designees prior to the commencement date of coverage under this agreement that was reported or should have been reported to any other insurer prior to the commencement date of this Policy.

If this Policy is a renewal of an agreement previously issued by us, and the coverage provided by us to you was continuously and without interruption in effect for the entire time between the inception date of the first such Policy and the inception date of coverage under this Policy, the reference in this Policy to the inception date above shall be deemed to refer to the inception date of the first Policy under which we began to provide you with the continuous and uninterrupted coverage of which this Policy is a renewal.

This Exclusion does not apply in instances in which the only pre-claim activity was the notice of an incident by any **insured** under the Policy to its risk management staff whether or not such notice resulted in an internal risk management investigation.

**Q.**    **Loss of Data or Personal Information**

Any liability arising from the loss of, unauthorized disclosure of, or unauthorized access to data or personal information, including Private Medical Information, as defined in the Health Insurance Portability and Accountability Act of 1996 (commonly referred to as HIPAA.

**R.**    **Prior Insolvency/Bankruptcy**

Any **medical incident**, **occurrence**, claim, circumstance, event or series of **medical incidents occurrences**, claims, circumstances or events arising from an insolvency or bankruptcy of you or any other **insured** covered under the Policy which was filed prior to the commencement of the Policy.

**S.**    **Other Insurance**

Any **medical incident** or **occurrence**, claim, circumstance, event or series of **medical incidents**, **occurrences**, claims, circumstances or events that may be covered under any other insurance effective prior to the commencement date of this Policy, including any coverage afforded by any extended reporting period.

**T.**    **Managed Care Errors and Omissions**

Any liability arising out of the operation, ownership, management or control of any Health Maintenance Organization or Preferred Provider Organization (PPO) or other similar organization.  However, this exclusion does not apply to your participation solely as a provider of health care services to a Health Maintenance Organization (HMO) or Preferred Provider Organization (PPO) or other similar organization not owned, managed or controlled by you.

Endurance American Specialty Insurance Company        HLC 0201 1208

**U.    Management Services**

Any liability arising out of management services provided by any **insured** or independent contractors retained by any **insured**, to hospitals or other healthcare facilities not owned by the **Named Insured** or any **insured** covered under this Policy, unless accepted by us and endorsed hereto.  We will provide limited automatic coverage to newly acquired management services for 30 days or for the remainder of the Policy Period, whichever is less.

**V.    Mobile Equipment**

Any **bodily injury** or **property damage** arising out of:

(i)    The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**; or

(ii)    The use of **mobile equipment** in, or while in the practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

**W.    Mold/Mildew and Other Fungi**

Any loss, claim or **suit** directly or indirectly arising out of, relating to or in connection with exposure to or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of mold, mildew, spores, mycotoxins, fungi, **organic pathogens** or other micro organisms of any type, nature or description.  Such loss, claim or **suit** is excluded regardless of whether they arise in connection with:

(i)    **Bodily injury;**
(ii)    **Property damage;**
(iii)    **Personal injury**
(iv)    **Advertising injury; or**
(v)    **Medical Incident**

There shall be no obligation to defend you against any loss, claim or **suit** excluded herein regardless of whether the allegations forming the basis of such loss, claim or **suit** are groundless, false or fraudulent.

This provision expressly excludes:

any cost, expense or charge to test, monitor, clean up, remediate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any way respond to or assess the affects of mold, mildew, spores, mycotoxins, fungi, **organic pathogens** or other micro organisms of any type, nature or description; and

any costs, expense, charge, fine or penalty, incurred, sustained, or imposed by order, direction, request or agreement of any court, governmental agency, or any civil, public or military authority.

This exclusion shall not apply to any loss, claim or **suit** directly or indirectly arising out of, relating to, or in connection with the **insured's** use of mold, mildew, spores, mycotoxins, fungi, **organic pathogens** or other micro organisms of any type, nature or description in connection with the rendering of **professional health care services.**

For the purposes of this exclusion, **organic pathogens** means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria, virus, or their by-products such as mycotoxins, mildew, or biogenic aerosol.  **Organic pathogens** include but are not limited to Aspergillus, Penicillium, Stachybotrys Chartarum, Stachboytrys Atra, Trichodema and Fusarium Memnoniella.

**X.    Non-compensatory Damages**

Any treble or extra-contractual damages are excluded including, but not limited to:

**(i)**    civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute or regulation or court rule;
**(ii)**   the return or restitution of fees, expenses or costs;
**(iii)**  the multiplied portion of multiplied awards;
**(iv)**   injunctive or declaratory relief;
**(v)**    plaintiff's attorneys fees associated with any of the above.

**Y.    Nuclear Energy Liability**

Any **bodily injury, property damage, personal injury, advertising injury** or **medical incident** in the United States, its territories or possessions, Puerto Rico or the Canal Zone:

**(i)**    with respect to which any i**nsured** under this policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limits of liability;
**(ii)**   resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendatory law thereof, or (b) any **insured** is or, had this policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

Under any Medical Payments Coverage, or any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization in the United States, its territories or possessions, Puerto Rico or the Canal Zone.

**(iii)**    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the **hazardous properties** of **nuclear material**, if:

(a) the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** in the United States, its territories or

possessions, Puerto Rico or the Canal Zone; or (2) has been discharged or dispersed therefrom;

(b) the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured** in the United States, its territories or possessions, Puerto Rico or the Canal Zone; or

(c) the injury or damage arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, Puerto Rico or the Canal Zone, this exclusion part iii applies only to injury to or destruction of property at such **nuclear facility**.

As used in this exclusion:

**Hazardous properties** include radioactive, toxic or explosive properties.

**Nuclear material** means **source material, special nuclear material or by-product material**.

**Source material**, **special nuclear material** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

**Waste** means any waste material (1) containing **by-product material** other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** herein.

**Nuclear facility** means

   **(i)**     any **nuclear reactor**;

   **(ii)**    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**;

   **(iii)**   any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 250 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   **(iv)**   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.  **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-

supporting chain reaction or to contain a critical mass of fissionable material.

For purposes of this exclusion, **property damage** includes all forms of radioactive contamination of property.

This exclusion shall not apply to nuclear medicine or radiation therapy furnished as **professional healthcare services**.

**Z.    Owned Property and Products / Work**

**(i)**    Any **property damage** to property owned by any **insured** or purchased by any **insured** under an installment sales contract or property on consignment to any **insured**;

**(ii)**   any **property damage** to any **insured's product** caused by such products or any of their parts; or

**(iii)**  any **property damage** to any **insured's work** arising out of the work or out of materials, parts or equipment furnished with such work.

**AA.   Personal Injury**

Any **personal injury** arising out of:

**(i)**    oral or written publication of material, if done by or at the direction of any **insured** with the knowledge of its falsity, or whose first publication took place before the beginning of our policy period;

**(ii)**   the willful violation of a penal statute, law, regulation or ordinance committed by or with the consent of any **insured**.

**BB.   Pollution**

**(i)**    Any **bodily injury**, **property damage**, **personal injury, advertising injury** or **medical incident** arising out of the actual, alleged or threatened discharged, dispersal, release or escape of **pollutants** or toxic substances:

(**a**) at or from premises owned, rented or occupied by any **insured**;

(**b**) at or from any site or location used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of **waste**;

(**c**) which are at any time transported, handled, stored, treated, disposed of, or processed as **waste** by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

(**d**) at or from any site or location on which any **insured** or any contractors or sub-contractors working directly or indirectly on behalf of any **insured** are performing operations:

(**1**) if the **pollutants** or toxic substances are brought on or to the site or location in connection with such operations; or

(**2**) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the **pollutants** or toxic substances.

    **(ii)**    Any loss, claim, **suit**, cost or expense arising out of any governmental direction or request that any **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the **pollutants** or toxic substances.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke vapor, soot, fumes, acids, alkalis, chemicals and **waste**.

**Waste** includes materials to be recycled, reconditioned or reclaimed.

Sections **(i) (a)** and **(d)** above do not apply to **bodily injury**, **property damage**, **personal injury, advertising injury** or **medical incidents** caused by heat, smoke or fumes from a **hostile fire**. As used in the exclusion, a **hostile fire** means one that becomes uncontrollable or breaks out from where it was intended to be.

## CC.    Product Recall

Any damages claimed for any loss, cost, or expense incurred by any **insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    **(i)**    any insured's product;
    **(ii)**    any insured's work; or
    **(iii)**    impaired property;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

## DD.    RICO

Any liability arising out of the Racketeer Influenced and Corrupt Organizations (RICO) Act.

## EE.    Statutory Obligations to Employees

Any obligation for which any **insured** or any company as its insurer may be held liable under any:

    **(i)**    Workers' Compensation laws;
    **(ii)**    Unemployment Compensation laws;
    **(iii)**    Disability Benefits laws;
    **(iv)**    United States Longshoremen's and Harbor Workers Act, and any amendments;
    **(v)**    Occupational Disease laws; or
    **(vi)**    any similar laws.

## FF.    Sexual Misconduct

Any actual or alleged sexual misconduct or sexual abuse, including, but not limited to, any physical acts or oral statement of a sexually suggestive manner, or any unwelcome physical conduct or touching.

Whenever coverage under any provision of this Policy would otherwise be excluded, suspended or lost because of Exclusion FF. Sexual Misconduct, the Company agrees that the coverage as would be afforded by this Policy will apply to each **insured** who did not personally commit or participate in said acts, or agree to any concealment of the acts. However, if each **insured** had knowledge of said acts, coverage would not be afforded.  For coverage to apply, the **insured** must notify the Company of the Claim as soon as the **insured** becomes aware of the Claim.

**GG.    Unfair Trade Practices**

Any allegations, liability or disputes, arising from or related to anti-trust, price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or similar state statute) that prohibits the unlawful restrain of trade, business or profession.

This exclusion shall not apply to allegations of restraint of trade, business or profession arising out of the activities of the **insured's** professional boards or committees which are described in the definition of **Professional healthcare services** provided that settlement thereof or final judgment rendered therein does not affirm a violation of law.  Regardless of such final settlement or adjudication, we will provide a defense as to such allegations.

**HH.    War and Terrorism**

Any loss, damage, demand, claim, **occurrence**, event or **suit** arising out of or in any way related to:

1.    Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or by any agent of any such government, power, authority, or forces; any weapon employing atomic fission or radioactive force whether in time or peace or war; civil war, insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering, combating or defending against such an **occurrence,** confiscation, nationalization, requisition, seizure, quarantine, or destruction by Customs regulations, order of any government, local authority, or public authority; or risks of contraband, illegal transportation, or trade;

2.    Any terrorist act, including, but not limited to, an act of terrorism, or preparation in respect of action or threat of action, designed to influence the government de jure or de facto of any nation or political division thereof, or in pursuit of political, religious, ideological, social or economic objectives or similar purposes to intimidate the public or a section of the public of any nation by any person or group(s) of persons whether alone or on behalf of or in connection with any organization(s) or government(s) de jure or de facto, and which involves violence against one or more persons; or involves damage to property; or endangers life other

than that of the person committing the action; or creates a risk to health or safety of the public or a section of the public.

## II.   Watercraft

Any **bodily injury**, **property damage**, **personal injury, advertising injury** or **medical incident** arising out of the ownership, entrustment, maintenance, operation, use, **loading or unloading** of any watercraft.

This exclusion does not apply if such liability is covered by valid and collectible **applicable underlying insurance** listed in the Schedule of Underlying Insurance**.**  However, the insurance provided by our Policy will be no broader than the insurance coverage scheduled as such**.**

## 5.   Definitions

**Administrator** means any administrator, superintendent, medical director, any department head (including the head of the medical staff), any member of your formal accreditation, standards review or equivalent professional board or committee or any staff member.

**Advertising Injury** means injury arising out of one or more of the following offenses in the course of your advertising activities.

  **(i)**    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
  **(ii)**   Oral or written publication of material that violates a person's right of privacy.
  **(iii)**  Misappropriation of advertising ideas or style of doing business.
  **(iv)**   Infringement of copyrights, title or slogan.

However, **Advertising Injury** shall not include:

  **(i)**    the infringement of registered trade mark, copyright, service mark, or trade name, other than titles or slogans, by use on or in connection with goods and services sold, offered for sale or advertised;
  **(ii)**   the incorrect description of any goods, services, articles or commodities;
  **(iii)**  a mistake or incorrect description in advertised price; or
        the failure of goods, services, **your product** or **your work** to conform with advertised quality or performance.

**Applicable Underlying Insurance** means the **primary insurance**, **self insured retention** or **retained limit** listed on the Schedule of Underlying Insurance which provides the **underlying amounts** for a specific loss, claim or **suit**.  The **applicable underlying insurance** is determined as follows:

  **(i)**    If the **primary insurance** or **self insured retention** apply to the loss, claim or **suit**, the greater of:
        **(a)** the limits of liability stated in the policies of **primary insurance** or **self insured retention** as listed on the Schedule of Underlying Insurance less

the amount by which any aggregate limit so stated has been reduced solely due to the payment of covered losses, claims or **suits** plus any other available insurance; or

(**b**) the **Underlying Amount** as listed on the Declaration page.

(**ii**)    If the **primary insurance** or **self insured retention** do not apply to the loss, claim or **suit**, the amount stated as the **Retained Limit**.

For the purposes of determining the **applicable underlying insurance** under parts (**i**) or (**ii**) of this definition, the limits of liability in any policy of **primary insurance** will apply even if the **primary insurer** claims any **insured** failed to comply with any condition of the policy; or the **primary insurer** or **insured** becomes bankrupt or insolvent.

**Applicable Underlying Insurance** does not include medical payments or medical expenses coverage that may be provided by **primary insurance** or **self insured retention.**

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. However, **auto** does not include **mobile equipment**.

**Bodily Injury** means **bodily injury**, sickness or disease, disability, shock, mental injury or mental anguish, or death sustained by any person, other than a patient.

**Defense costs and expenses** means a payment allocated to a specific loss, claim or **suit** for its investigation or defense, including but not limited to:

(**i**)    attorney fees and all other litigation expenses;

(**ii**)    the cost of bonds to appeal a judgment or award in any suit we defend but only for bond amounts within the Limits of Liability available under this policy;

(**iii**)    up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the liability for **bodily injury** or **property damage** under this policy applies;

(**iv**)    the cost of bonds to release attachments, but only for bond amounts within the Limits of Liability available under this policy;

(**v**)    costs taxed against any **insured** in the **suit** within the Limits of Liability available under this policy;

(**vi**)    interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of **ultimate net loss** available for the judgment under this policy.

However, we shall have no obligation to apply for or furnish bonds payable hereunder.

**Defense costs and expenses** do not include:

(**i**)    Salaries and expenses of our employees or any **insured's** employees other than that portion of those fees, salaries and expenses of attorneys employed by us allocated to a specific claim or **suit**; and

(**ii**)    Fees and expenses of independent investigators, adjustors, or third party administrators hired by any **insured**.

**Employee(s)** means a person whose work is engaged and directed by you, including students and volunteers.  An **employee** includes seasonal and temporary **employees** and **employees** leased or loaned to you.  An employee means members of the clergy and other religious personnel, but only

while acting within the scope of their duties while at any of your facilities.  An independent contractor is not an **employee**.  Solely with respect to **medical incidents**, an **employee** does not include interns, fellows, residents, physicians, surgeons, dentists, nurse midwives, podiatrists or chiropractors or osteopaths.

**Executive officer** means a person holding any of the officer positions, or their functional equivalent, created by your charter, constitution, by-laws or any similar governing document.

**Extended Reporting Period** means any policy provision which provides any extended time period for any **insured** to report losses, claims or **suits** by any **insured's** written request, with or without additional premium charge.

**Good Samaritan Acts** means those services performed by you in rendering, or failing to render, without remuneration, emergency treatment at the scene of an accident, medical crisis or disaster.

**Impaired Property** means tangible property, other than any **insured's product** or any **insured's work**, that cannot be used or is less useful because:

> **(i)**   it incorporates any **insured's product** or any **insured's work** that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **(ii)**   any **insured** has failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> **(a)** the repair, replacement, adjustment or removal of any **insured's product** or any **insured's work**; or
>
> **(b)** any **insured** fulfilling the terms of the contract or agreement.

**Insured** means:

The **Named Insured** as designated in Item 1. of the Declarations. If you are designated in the Declarations of this policy as:

> **(i)**   An individual, you and your spouse are **insureds**, but only as respects the conduct of a business of which you are sole owner.
>
> **(ii)**   A partnership or joint venture in which you have majority ownership, your and your members, your partners and their spouses, but only as respects the conduct of your business. This policy does not apply to your partnerships or joint ventures or their partners or members thereof which are not designated in the Declarations of the policy as **Named Insureds**.
>
> **(iii)**   An organization, other than a partnership or joint venture, you and your **executive officers,** directors and trustees but only with respect to the conduct of your business.  Your stockholders and members are also **insureds**, but only with respect to their liability as stockholders or members.
>
> **(iv)**   A limited liability company, you and your members, but only with respect to the conduct of your business.  Your managers are also **insureds** but only with respect to their duties as your managers.  No person or organization is an **insured** with respect to the conduct of any current or past limited liability company that is not shown as a **Named Insured** in the Declarations.
>
> **(v)**   A trust is an **insured.**  Your trustees are also **insureds**, but only with respect to their duties as trustees.

**Insured** also means:

    **(vi)**    Your **employees** while acting within the scope of their duties as such and while performing **Good Samaritan Acts.**

    **(vi)**    Your **administrator** but solely as respects their administrative duties performed for and on behalf of you**.**

    **(vii)**    Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, in which you maintain ownership or majority interest, will qualify as an **insured**.  However:

        (a) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

        (b) There is no coverage for **bodily injury, property damage,** or **medical incident** occurring prior to the date of acquisition or formation of the organization unless we agree, in writing, to a different retroactive date; and

        (c) There is no coverage for **personal injury** or **advertising injury** arising out of any offense committed before you acquired or formed the organization.

        For coverage to apply to the newly acquired or formed organization for more than ninety (90) days, you must submit an underwriting application to us; the application must be approved by us; you must pay the additional premium, if any; and agree to any amendment to the provisions of this policy required by us relating to such newly acquired or formed organization.

    **(viii)**    Any persons or organizations who are **insureds** or additional **insureds** on the scheduled **applicable underlying insurance** but not for broader coverage than is available to them under the scheduled **applicable underlying insurance.**

    **(ix)**    Any person (other than an **employee**), or organization while acting as your real estate manager.

**Insured Contract** means:

    **(i)**    a lease of premises;

    **(ii)**    a sidetrack agreement;

    **(iii)**    any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **(iv)**    any obligation, as required by ordinance, to indemnify a municipality except in connection with work for a municipality;

    **(v)**    an elevator maintenance agreement; or

    **(vi)**    that part of any other contract or agreement pertaining to any **insured's** business under which any **insured** assumes the tort liability of another to pay damages because of **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **insured contract** does not include that part of any contract or agreement:

**(a)** that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(1)** preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the **bodily injury**, **property damage**, **personal injury, advertising injury** or **medical incident**;

**(b)** under which any **insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of **insured's** rendering or failing to render professional services, including those listed in part **(a)** of this definition, and supervisory, inspection or engineering services; or

**(c)** that indemnifies any person or organization for damage by fire to premises rented or loaned to any **insured**.

**Insured's product** means:

**(i)** Any goods or products, other than real property, that are manufactured, sold, handled, distributed or disposed of by:

**(a)** any **insured**;

**(b)** others trading under any **insured's** name; or

**(c)** a person or organization whose business or assets any **insured** has acquired.

**(ii)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Insured's product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in parts **(i)** and **(ii)** of this definition.

**Insured's product** does not include vending machines or other property rented to or located for the use of others but not sold.

**Insured's work** means:

**(i)** work or operations performed by any **insured** or on any **insured's** behalf;

**(ii)** any materials, parts or equipment furnished in connection with such work or operations.

**Insured's work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in parts **(i)** and **(ii)** of this definition.

**Loading or Unloading** means the handling of property:

**(i)** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

**(ii)** While it is in or on an aircraft, watercraft or **auto**;

**(iii)** While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

But **loading and unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

**Medical incident** means the rendering or failure to render **professional healthcare services.** Any such act or omission, together with all related acts or omissions in the furnishing of or failing to furnish **professional healthcare services** to any one person shall be considered as one **medical incident**.

**Mobile Equipment** means:

    **(i)**    A land vehicle, including any attached machinery or equipment, whether or not self-propelled:

        **(a)** not subject to motor vehicle registration;

        **(b)** maintained for use exclusively on premises owned by or rented to any **insured**, including the ways immediately adjoining;

        **(c)** designed for use principally off public roads; or

        **(d)** maintained primarily to provide mobility to permanently mounted power cranes shovels, loaders, diggers, drills, road construction or resurfacing equipment.

    **(ii)**    Vehicles not described in part (i) of this definition that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

            Air compressors, pumps and generators, including spraying, molding, building cleaning, geographical exploration, lighting, well servicing equipment and cherry pickers and similar devices to raise and lower workers.

**Named Insured** means the Named Insured stated in Item 1 of the Declarations.

**Occurrence** means:

    **(i)**    For **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    **(ii)**    For **personal injury** or **advertising injury**, injuries or damages arising from a covered offense(s), as defined in the **personal injury** and **advertising injury** definitions.

**Patient(s)** means a person receiving **professional healthcare services** from the **insured** whether before, during or after registration for such services.

**Personal Injury** means injury other than **bodily injury** arising out of one or more of the following offenses:

    **(i)**    False arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, or malicious prosecution.

    **(ii)**    Oral or written publication of material that slanders or libels a person or organization, disparages their goods, products or services, or violates their right of privacy.

**Primary Insurance** means the policy(s) of insurance issued by a **primary insurer**, listed in the Schedule of Underlying Insurance, including renewal or replacement of such coverage which is not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

**Primary Insurer** means any organization providing **primary insurance**.

**Professional healthcare services** means:

   **(i)**   Medical, surgical, dental, x-ray, nursing, mental or other similar **professional health care services** or treatments.

   **(ii)**   Providing or dispensing of food, beverages, medications or medical supplies or appliances in connection with services described in Paragraph (i) above.

   **(iii)**   Handling or treatment of dead bodies, including autopsies, organ donation or harvesting, or other procedures.

   **(iv)**   The work of your formal accreditation, standards review or equivalent professional board or committee, done for any **insured** while:

   **(a)** Evaluating the professional qualifications or clinical performance of any provider of **professional healthcare services;** or

   **(b)** Promoting and maintaining the quality of **professional healthcare services** being provided.

   **(v)**   The execution, or failure to execute, a decision or directive of your formal accreditation, standards review or equivalent professional board or committee.

   **(vi)**   Education and training conducted by you for your **employees** which results in injury caused or alleged to have been caused by a deficiency or defect in the education or training.

   **(vii)**   Research and development conducted by you which results in injury caused or alleged to have been caused by a deficiency or defect in the conduct or the reported results of such research or development.

   **(viii)**   Transportation (including, but not limited to, transfer into and out of vehicles) of patients.

**Property Damage** means physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured.

**Retained Limit** means the sum stated in the Declarations as such. This is the minimum amount for which the **insured** is liable on each and every loss, claim or **suit** according to the terms of the **applicable underlying insurance** provision of this Policy.

**Self Insured Retention** means the amounts listed in the Schedule of Underlying Insurance as such, that you have agreed to pay for **all bodily injury, property damage, personal and advertising injury** or **medical incident**, as applicable, for which you are liable. The Limits of Liability for the **self insured retention** are outlined in the Schedule of Underlying Insurance.

**Suit** means a civil proceeding in which damages secondary to an **occurrence** or **medical incident** are alleged. A **suit** includes, but is not limited to, an arbitration proceeding or other alternative dispute resolution in which damages are claimed.

**Territory** means anywhere in the world, provided claim is reported to us and suit is brought within the United States of America, its territories or possessions, Puerto Rico or Canada.

**Ultimate Net Loss** means the sum actually paid or payable, after deduction of all recoveries and salvage, in the settlement or satisfaction of losses, claims or **suits** for which any **insured** is liable either by adjudication or settlement including **defense costs and expenses**.

**Underlying amounts** means any limit of liability which is available for payment of all **bodily injury**, **property damage**, **personal injury**, **advertising injury** or **medical incident** losses arising out of any one coverage, combination of coverages, or per policy, provided by the **primary insurance, self insured retention,** or **retained limit. Underlying amounts** does not include limits available from the **primary insurance** or **self insured retention** for medical payments or medical expenses.

## III.   CONDITIONS

### A.   Action Against Us

(i)   No person or organization has a right under this Policy:

    (a)   to join us as a party or otherwise bring us into a suit asking for damages from any **insured**; or

    (b)   to bring suit under our policy; unless all of our policy terms have been fully complied with.

### B.   Appeals

We can appeal any judgment brought against any **insured** if:

    (i)   the judgment is in excess of the **underlying amounts**; and

    (ii)   neither any **insured** nor the **primary insurer** elects to appeal.

If we appeal we will pay the costs of the appeal plus any incidental interest, but in no event will we pay out more than is provided by our applicable Limit of Liability plus the costs and interest of the appeal.

### C.   Inspection of Records

Upon request, you shall make available to us or our duly authorized representatives at all reasonable times during and after the Commencement and Termination Dates of the Policy and at the **insured's** head office or at any other place it may be located all information regardless of the media in which such information and records of the **insured** are stored, copies of the books, accounts, or other documents containing information relating to the business insured under the Policy.

Our inspection or audit of such records shall not relieve you or your agents from any duties hereunder to report claims or potential claims to us.  Our inspection or audit of such records shall not constitute notice or acceptance of notice to us as provided in this Policy. Our inspection or audit of such records shall not constitute acceptance or confirmation of coverage with respect to the Policy.

We shall be permitted but not obligated to inspect your or your agents' property, operations, books, records and files at any time.   Neither our right to make inspections not the

making thereof of a report thereon shall constitute an undertaking on behalf of or for the benefit of you or others to determine or warrant that such property or operations are safe or are in compliance with any statute, law, ordinance, rule or regulation.

### D.   Commencement and Termination

The Commencement and Termination Dates of the Policy shall be as specified in the Declarations of this Policy, at the location(s) specified in the Policy.

### E.   Insolvency/Bankruptcy

In the event of your insolvency, the insurance provided by this Policy shall be payable by us directly to you or to your liquidator, receiver, or statutory successor on the basis of your liability without diminution because of your insolvency, or because your liquidator, receiver, conservator or statutory successor shall give written notice of the pendency of each claim against you within a reasonable time after such claim is filed in the insolvency proceeding. During the pendency of such claim, we may, at our own expense, investigate such claims and interpose in the proceedings where such claim is to be adjudicated, any defense or defenses which it may deem available to you, your liquidator, receiver or statutory successor. Subject to court approval, any expense thus incurred by us shall be chargeable against you as part of the expense of liquidation to the extent of such proportionate share of the benefit as shall accrue to you solely as a result of the defense undertaken by us.

The insolvency, bankruptcy, receivership or refusal or inability of you to pay claims will not increase the amount we would be obligated to pay in the absence of such insolvency, bankruptcy, receivership or refusal.  We will not be obligated to assume the responsibility of any **Named Insured**, **insured**, or **primary insurer** in connection with the **applicable underlying insurance.**

### G.   Cancellation

Either party may cancel this Policy by giving sixty (60) days written notice to the other party and mailing such notice to the address appearing in the Declarations.  The effective date of the cancellation will be the date the written notice is received by us or the date specified in the written notice, whichever is later. However, in the event you fail to pay a premium when due, we may cancel this Policy effective upon fifteen (15) days' written notice, or such longer period as may be required by law, by providing notice to you in the manner set forth in the preceding sentence.

Furthermore, either party may cancel the Policy at any time by giving the other party fifteen (15) days prior written notice sent to the address appearing in the Declarations in the event that the other party

- becomes insolvent or is unable to pay its debts, or
- transfers control by change in ownership or otherwise, or
- fails seriously to comply with the terms and conditions of the agreement

Written notice shall be deemed to include facsimile.

In the event of this Policy being terminated before the expiry of the duration period agreed by the parties, we shall return the premium

- on a pro-rata basis less the amount of any commission, ceding or broker, and other deductions if it is the company that cancels, or

In the event of this Agreement being terminated at your request, we shall return the premium

- on a pro-rata basis less 10% of the pro-rata unearned premium subject to the Minimum Earned Premium as specified in the Declarations.

Both amounts shall be calculated by reference to the premium due hereunder.

Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

## H.      Changes

This Policy contains all the agreements between any and all **insureds** and us concerning this insurance. You are authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

## I.      Claims Handling, Claims Cooperation and Consent to Settlement

You shall properly and thoroughly investigate any claim or loss and, to the extent required by the Policy, defend and/or control any claim or loss that affects this Policy.

It is a condition precedent to our liability that you shall fully cooperate with, and shall actively take steps to involve us or any person designated by us in the adjustment and settlement of the claim, as well as permit us at our own expense to associate with you in the investigation, defense, and/or control of any claim or suit that may affect this Policy.  It is further a condition precedent to our liability that you and/or any other **insured** comply with rules of court, timely respond to discovery requests and other orders or rulings regarding a claim or suit relevant to this Policy.

If we recommend acceptance of a settlement demand that is excess of **underlying amounts** set out in the Schedule of Underlying Insurance, and you unreasonably refuse to accept said demand, our Limit of Liability shall be the lesser of our Limit of Liability as set out in the Declarations or the difference between the settlement amount demanded and the **underlying amounts**.

It is a condition precedent to our liability for any settlement or payment in satisfaction of awards or judgments that you may make with respect to the Policy that you first obtain our advance written consent to any offer of settlement which would require contribution from us pursuant to the terms of this Policy.

You agree that you owe us the same duty of good faith claims handling and duty to settle that a **primary insurer** would owe to an excess insurer regardless of whether you have a captive or **self insured retention**.

## J.      Extended Reporting Period

**(i)** Automatic Extended Reporting Period

We will provide you with an automatic **extended reporting period** during which claims taking place subsequent to the retroactive date and prior to the expiration or termination date of this Policy and otherwise covered, may be reported.  This period expires thirty (30) days from the date of expiration or termination.

**(ii)** Optional Extended Reporting Period

We agree to offer you the option to purchase an **extended reporting period** endorsement for an additional premium to be computed in accordance with our rules, rates and actuarial analysis on the effective date of the endorsement.  The endorsement will provide an extended reporting period only for claims first known to the insured and first made against you during the **extended reporting period** and which **medical incident** or **occurrence** takes place subsequent to the retroactive date set forth in the Declarations page and prior to the expiration or termination date of this Policy and otherwise covered hereunder.  You do not have the right to purchase such endorsement if we cancel for non-payment of premium or noncompliance with the policy's conditions and terms.

The right to purchase the **extended reporting period** must be exercised by you by written notice to us not later than thirty (30) days after the expiration or termination date of this Policy.

Our Aggregate Limit, as stated in Item 3 of the Declarations will not be reinstated for claims under this endorsement.

The **extended reporting period** does not change the scope of coverage provided under this Policy except as described above.

The insurance provided under the **extended reporting period** endorsement is excess over any other valid and collectible insurance that begins or continues in effect, whether the other insurance applies on a primary, excess, contingent, or any other basis.

Such **extended reported period** as set for in 1 or 2 above, shall not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the limits of liability applicable to such claims.

## K.  Fraud and Misrepresentation

This Policy will be void if you mislead us, misrepresent yourself or defraud us, or attempt to mislead us, attempt to misrepresent yourself or attempt to defraud us on matters concerning this insurance.  Your unintentional errors or omissions will not affect your rights under this policy.

## L.  Government Access to Records

This endorsement changes your Policy to comply with the requirement of Section 952 of the Omnibus Reconciliation Act of 1980.  Upon written request, we will allow the Secretary of

Health and Human Services and the Comptroller General access to the Policy and necessary books, documents and records to verify the cost of the Policy, to the extent required by law. Access will also be allowed to subcontractors between us and any related organization of our and to its books, documents and records.  Such access will be provided up to four years after the services furnished under this Policy end.

**M.    Maintenance of Underlying Insurance**

  **(i)**    For as long as our Policy is in effect, the **primary insurance** or **self insured retention** must continuously:
  **(a)** provide no less coverage than written on the Schedule of Underlying Insurance at inception of our Policy; and
  **(b)** afford no lower Limit of Liability than those originally written on the Schedule of Underlying Insurance, except for reduction or exhaustion of **underlying amounts** solely due to payment of covered losses, claims or **suits**.

  **(ii)**   You must notify us within 30 days if:
  **(a)** there are any changes in the **primary insurance** or **self insured retention**;
  **(b)** there are any changes in the **underlying amounts** which decrease them from that indicated on the Schedule of Underlying Insurance; or
  **(c)** **primary insurance** coverage, replacements or renewals thereof, are changed resulting in more restrictive coverage than shown in the Schedule of Underlying Insurance.

  **(iii)**  If the **underlying amounts** listed on the Schedule of Underlying Insurance:
  **(a)** Are not maintained;
  **(b)** Have limits that are less than those indicated on the Schedule of Underlying Insurance; or
  **(c)** are unavailable or uncollectible due to bankruptcy, insolvency, liquidation of a **primary insurer**, or your failure to comply with the terms and conditions of the **primary insurance**;

our coverage will apply in the same manner as if the **primary insurance** or **self insured retention** were still in effect, maintained and collectible.

We may at our discretion agree to follow such changes by written endorsement attached hereto and upon payment by you of any additional premium relating to such changes. Further, such change in coverage is conditioned upon your payment, when due, of any such additional premium required by us relating to such changes.

**N.    Notice of Loss/ Loss Reporting**

It is a condition precedent to our obligations under this Policy that you shall give written notice as soon as practicable, but in no event later than thirty (30) days after the termination date of the Policy as set forth in the Declaration  of any claim or **suit** that:

  **(i)**    is likely to involve this Policy; or

**(ii)**   involves injury to a **patient** or potential claimant substantially affecting or limiting the ability to independently care for him or herself or manage the daily affairs of life, including but not limited to

**(a)** loss of sensory capacity (sight or hearing)
**(b)** amputation
**(c)** brain damage or brain injury
**(d)** birth injury to a child
**(e)** paralysis or serious neurological impairment
**(f)** burns
**(g)** serious cosmetic deformity
**(h)** unexpected death; or

**(iii)**   brings the totals of all payments and reserves by you to a level of 25 percent or more of the entire **underlying amounts**; or

**(iv)**   involves multi-claimant (including class action) or multi-district litigation against any **insured;** or

**(v)**   involves a demand from a Claimant which is 25 percent or more of the **underlying amounts**.

**Occurrences, medical incidents**, claims and/or **suits** that meet this criteria shall be reported individually and not by bordereau or loss run.

Furthermore, you shall immediately advise us of any subsequent material developments in connection with any claim or loss reported.

Such written notice shall identify any involved **insured** and contain reasonably obtainable information with respect to the time, place and circumstances of the injury, including names and addresses of the injured and of available witnesses and the extent and type of claim anticipated.

Notice shall be sent to: Claims Department of Endurance Specialty Insurance Marketing Corporation, 725 S. Figueroa St., Suite 2100, Los Angeles, CA 90017, or Telephone: (213) 270-7017 or Fax: (213) 270-7800 or E-Mail addressed to:  Eclaims@enhinsurance.com,

**O.**   **Other Insurance**

If other insurance:

**(i)**   is available to pay losses, claims or **suits**;
**(ii)**   applies due to provisions of an **Extended Reporting Period**; or
**(iii)**   applies on a retroactive basis, or if **primary insurance** applies on a retroactive basis
**(iv)**   our policy applies in excess of and does not contribute with such insurance.

If you have purchased any other umbrella policy(s) from us covering the same operations and exposures, the policy with the greater limit of liability will apply to any losses, claims or

**suits**. We will not be obligated to investigate or defend nor will we be liable for payment of losses, claims, **suits** or **defense costs and expenses** under the provisions of the policy(s) with lower limits. If more than one policy applies with equal limits you can choose the policy to apply, but we will pay only under the terms and conditions of that one chosen policy.

### P.     Our Right to Recover Payment

If we make a payment under this insurance, any and all **insureds** will assist us and the **primary insurer** in recovering what we paid by using any and all **insured's** rights of recovery. Reimbursement will be made in the following order:

    **(i)**    First, to any interest (including any **insured**) who has paid any amount in excess of the limits of this insurance;

    **(ii)**    Next, to us; and

    **(iii)**    Then to any interest (including any **insured** and the **primary insurer**) as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

### Q.     Payment of Loss

    **(i)**    We are obligated to pay under this Policy only after:

        **(a)** The **primary insurer(s)** has paid their limit of liability and you have paid the **Self  Insured Retention or Retained Limit**, as applicable;

        **(b)** the **primary insurer(s)** and all **insureds** have complied with their obligations to defend and pay **defense costs and expenses**; and

        **(c)** final judgment is rendered against any **insured** after trial, or written agreement is reached by any **insured**, claimants, **primary insurer(s)** and us.

    **(ii)**    Furthermore:

        **(a)** Any person who secures any judgment or written agreement as noted in part **(i) (c)** of this Condition, shall make a definite claim for loss within a reasonable time after final determination of the judgment or agreement. Subsequent payments may be made on the same claim or loss payable by us within 30 days after we verify the claim or loss.

        **(b)** Bankruptcy or insolvency of any **insured** shall not relieve us of our obligations under the terms of this Policy.

        **(c)** You will promptly reimburse us for any amount within the **Retained Limit** paid by us on behalf of any **insured**.

### R.     Premium

You shall be responsible for payment of all premiums and will be the payee of any return premium.

The premium can be changed if the policy terms and conditions are changed such as by:

    (**a**) adding additional **insureds**;
    (**b**) changing limits of liability;
    (**c**) adding or changing **applicable underlying insurance**; or
    (**d**) extending the policy period or requesting an **Extended Reporting Period** endorsement.

**S.**      **Representations**

By accepting this Policy you agree that:

    (**i**)      the information shown in the Declarations and the Schedule of Underlying Insurance of our Policy is accurate and complete;
    (**ii**)      the information is based on representations and statements made by you in your submission to us for this coverage; and
    (**iii**)      we have issued and continue our Policy in reliance upon those representations and statements.

In the event of an unintentional error and omission, we reserve the right to adjust the policy premium, terms and conditions to reflect this material change.

**T.**      **Transfer of Any Insured's Rights and Duties**

Any **insured's** rights and duties under this insurance may not be transferred without our written consent, except if that **insured** dies;

    (**i**)      the deceased **insured's** rights and duties will be transferred to their legal representative, but only while acting within the scope of duties as their legal representative; or
    (**ii**)      the deceased **insured's** rights and duties will be transferred to anyone having temporary custody of their property until their legal representative has been appointed.

**U.**      **Unimpaired Aggregate**

It is agreed that should any of the policies listed on the Schedule of Underlying Insurance, including renewals or replacements thereof, be nonconcurrent with the Policy Period of this Policy, the limits scheduled shall be considered unimpaired as of the inception date of our Policy.

**V.**      **When a Claim is Considered to be First Made**

If the coverage is claims made:

A claim for **bodily injury, property damage, personal injury, advertising injury** or **medical incident** shall be considered as being first made at the earlier of the following times:

(i)     when you first became aware and give written notice to us during our Policy Period or any **extended reporting period**, that a loss, claim or **suit** has been made; or

(ii)     when you first became aware and give written notice to us during our Policy Period or any **extended reporting period**, of specific circumstances involving a particular person which may result in a loss, claim or **suit**.

**W.     Loss Bordereau**

At the end of each quarterly period, with the first quarterly period to commence on the first day of the Policy Period, you shall submit a Loss Bordereau listing all other specific circumstances, potential claims, incidents or events first known to any **insured** during the policy period.  The Loss Bordereau shall also include all existing **medical incidents**, claims, or **suits** first made and first reported to us in writing during the Policy Period as required in N. Notice of Loss/Loss Reporting.

The Loss Bordereau must be identified specifically by you as the final listing of all **medical incidents**, claims, **suits** or circumstances for that particular Policy Period.

The Loss Bordereau should not include inquiries or claims which do not fall within the coverage provided under this Policy or claims reported to a prior carrier.

Notice given in a Loss Bordereau does not relieve you from reporting **medical incidents**, claims or **suits** on an individual basis that fall within the criteria of Condition N.  Notice of Loss/Loss Reporting.  Notice of Loss/Loss Reporting is a condition precedent to your duties hereunder.

Such Loss Bordereau shall contain a description of the claim and injury, the date of loss, the date the claim or event was first reported to you and the name of any involved **Insured**.

Acceptance of the Loss Bordereau does not mean we agree that the claims listed are covered by this Policy.  All **medical incidents**, claims, **suits** or circumstances reported are subject to the terms, conditions, declarations, insuring agreements, definitions and exclusions of this Policy to affect coverage in respect to any **medical incident**, claim, **suit** or circumstance.

No other loss run, bordereau, or listing shall be recognized as a final listing of all **medical incidents**, claims, **suits** or circumstances.

**Date of Issuance:**

IN WITNESS WHEREOF, the Company certifies that the above Policy is in effect and has caused this Agreement to be executed by its duly authorized representatives:

In St. Louis, Missouri, this 26th day of May, 2016.

**Endurance American Specialty Insurance Company**

_____

Authorized Signature



**Endurance American Specialty Insurance Company**
**750 3rd Avenue**
**New York, NY  10017**

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

**Senior Vice President**                                        **President**

# FORMS AND ENDORSEMENT SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form Number | Form Name |
|---|---|
| SN 9048 0914 FL | Surplus Lines Notice - Florida |
| HLC 0001 1208 | Healthcare Umbrella Declaration Page |
| HLC 0201 1208 | Healthcare Umbrella Liability Policy |
| IL 1008 0114 | Signature Page |
| HLC 0101 0606 | Forms and Endorsement Schedule |
| HLC 0102 0606 | Schedule of Underlying Policies |
| HLC 1305 1208 | Employee Definition Endorsement – Physicians and Surgeons |
| HLC 0103 1208 | Named Insured Extension Endorsement |
| HLC 1301 0512 | Service of Suit Endorsement |
| PN-0001-0407 | OFAC |
| HLC 1311 0108 | Disclosure Pursuant To Terrorism Risk Insurance Act – Rejection of Offer |
| HLC 1001 0606 | General Change Endorsement #1 – Underlying Limits – Self Insured Retention Defense Costs and Expenses Erode SIR |
| HLC 1001 0606 | General Change Endorsement #2 – Cancellation Clause Endorsement (Credit Rating Changes) |
| HLC 1001 0606 | General Change Endorsement #3 – Amendment – Renewal Agreement Endorsement |
| HLC 1001 0606 | General Change Endorsement #4 – Amendment of Limits of Liability – Separate Aggregate Towers |
| HLC 1001 0606 | General Change Endorsement #5 – Supplemental Reimbursement Coverage(s) Endorsement |
| HLC 1001 0606 | General Change Endorsement #6 – Umbrella Claims Made General Liability Endorsement |
| HLC 1001 0606 | General Change Endorsement #7 – Employee Benefit Liability Endorsement – Claims-Made Coverage |

# SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| **Tower #1** | | |
| Carrier: Self Insured Retention<br>Policy Period:  April 15, 2016<br>to April 15, 2017 | Hospital Professional Liability including Patient and Non-Patient General Liability, Physicians Professional Liability as well as Employee Benefits Liability | $ 2,000,000  Each Medical Incident or Occurrence<br>$ 2,000,000  Annual Aggregate<br>Excess of:<br>$ 3,000,000  Each Medical Incident or Occurrence<br>$ 9,000,000  Annual Aggregate<br>(Inclusive of:<br>$1,000,000/$3,000,000 per physician) |
| **Tower #2** | | |
| Carrier: Homeland Insurance Company of New York<br>Policy No.: MFL-004640-0415<br>Policy Period:  April 15, 2016<br>to April 15, 2017 | Professional Liability and General Liability – Baptist Medical Park Ambulatory Surgery Center, LLC | $ 1,000,000  Each Medical Incident or Occurrence<br>$ 3,000,000  Annual Aggregate |
| Carrier: Arch Specialty Insurance Company<br>Policy No.: FLP0054437-03<br>Policy Period:  April 15, 2016<br>to April 15, 2017 | Professional Liability and General Liability - Andrews Institute Ambulatory Surgery Center, LLC | $ 2,000,000  Each Medical Incident or Occurrence<br>$ 4,000,000   Annual Aggregate |
| Carrier: Arch Specialty Insurance Company<br>Policy No.:  FLP0054437-03<br>Policy Period: April 15, 2016<br>to April 15, 2017 | Employee Benefits Liability - Andrews Institute Ambulatory Surgery Center, LLC | $ 1,000,000  Each Employee<br>$ 3,000,000   Aggregate |
| Carrier: Hartford Fire Insurance Company<br>Policy Number: 21 CSE S36501<br>Policy Period: April 15, 2016<br>to April 15, 2017 | Automobile Liability – BHC, Lakeview etal | $ 2,000,000  Combined Single Limit |
| Carrier: Safety National Casualty Corporation<br>Policy Number:  SP 4054158<br>Policy Period: January 1, 2016<br>to January 1, 2017 | Employers Liability – BHC (Excluding Lakeview and Atmore) | $ 2,000,000 Each Accident<br>$ 2,000,000 Disease – Policy Limit<br>$ 2,000,000 Disease – Each Employee<br><br>Excess of:<br>$500,000 SIR Per Occurrence |

| Carrier: Hartford Fire Insurance Company<br>Policy Number:  21 WN S36500<br>Policy Period:  April 15, 2016<br>            to April 15, 2017 | Employers Liability – Lakeview Center | $  1,000,000 Each Accident<br>$  1,000,000 Disease – Policy Limit<br>$  1,000,000 Disease – Each Employee |
|---|---|---|
| Carrier: Federal Insurance Company<br>Policy Number: 9957-9764-07<br>Policy Period: April 15, 2016<br>            to April 15, 2017 | Helipad Liability | $10,000,000 Each Occurrence |
| Carrier: Federal Insurance Company<br>Policy Number: 9957-9762-07<br>Policy Period: April 15, 2016<br>            to April 15, 2017 | Non-Owned Aircraft Liability | $10,000,000 Each Occurrence |
| Carrier: HealthCare Workers Compensation Self-Insurance Fund<br>Policy Number: 000341/004<br>Policy Period: January 01, 2016<br>            to January 01, 2017 | Employers Liability – Langhorne Cardiology Consultants, Inc. DBA Cardiology Consultants Brewton | $ 1,000,000 Each Accident<br>$ 1,000,000 Disease – Policy Limit<br>$ 1,000,000 Disease – Each Employee |

# EMPLOYEE DEFINITION ENDORSEMENT
# PHYSICIANS AND SURGEONS

### THIS ENDORSEMENT CHANGES THE POLICY.
### PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

HEALTHCARE UMBRELLA LIABILITY POLICY (HLC 0201 1208)


Section II, General Policy Provisions, 5. Definitions, is amended as follows:

The definition of **employee** is amended to include the following:

    **(i)**    any licensed physician, surgeon, dentist, nurse midwife, podiatrist or chiropractor, acting as such, who is an **employee** of the **insured** under a written employment contract or whose status as an **employee** can be verified by other documents existing at the time of rendering, or failing to render **professional healthcare services** at the direction of the **insured** while acting within the scope of their duties**;**


All other terms and conditions of this policy remain unchanged.

Endurance American Specialty Insurance Company          HLC 1305 1208

# NAMED INSURED EXTENSION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.
### PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the policy:

HEALTHCARE UMBRELLA LIABILITY POLICY (HLC 0201 1208)

The **Named Insured** as shown in **Item 1.** of the Declarations and the Retroactive Date as shown in **Item 5**. of the Declarations are amended to include the following:

| Named Insured | Professional Liability Retroactive Date | General Liability Retroactive Date | Ending Date (n/a if blank) |
|---|---|---|---|
| Baptist Health Care Corporation | 01/01/86 | 04/15/02 | |
| Baptist Hospital, Inc. | 01/01/86 | 04/15/02 | |
| Gulf Breeze Hospital, Inc. | 01/01/86 | 04/15/02 | 04/01/95 |
| Baptist Hospital, Inc. d/b/a Gulf Breeze Hospital | 03/22/95 | 04/15/02 | |
| Baptist Health Affiliates, Inc. d/b/a Jay Hospital | 01/01/86 | 04/15/02 | 02/13/01 |
| Baptist Health Affiliates, Inc. name change to Jay Hospital, Inc. | 01/01/86 | 04/15/02 | 02/13/01 |
| Jay Hospital, Inc. | 02/13/01 | 04/15/02 | |
| Baptist Manor, Inc. | 07/05/00 For primary coverage 01/05/00 For excess coverage | 04/15/02 | 11/30/13 Acquired by GCHC |
| Baptist Health Care Foundation, Inc. | 01/01/86 | 04/15/02 | |
| Baptist Health Ventures, Inc. | 01/01/86 | 04/15/02 | |
| Baptist Leadership Group, LLC | 10/01/09 | 10/01/09 | 09/10/13 |
| Baptist Hospital, Inc. d/b/a Baptist Life Flight | 02/02/06 | 02/02/06 | |
| Baptist Physician Associates, LLC | 02/17/04 | 02/17/04 | |
| Baptist Medical Group, LLC | 05/04/09 | 05/04/09 | |
| Baptist Medical Group-Ob-Gyn, LLC (Tax ID Transitioned To Baptist Medical Group) | 10/01/10 | 10/01/10 | 09/27/13 |
| Baptist Medical Group - Orthopedic Practice, LLC | 09/11/09 | 09/11/09 | |
| Baptist Physician Group, LLC | 10/12/01 | 04/15/02 | |
| Baptist Physician Enterprise, LLC (Tax ID Transitioned to Baptist Medical Group) | 05/27/09 | 05/27/09 | 09/27/13 |

| Named Insured | Professional Liability Retroactive Date | General Liability Retroactive Date | Ending Date (n/a if blank) |
|---|---|---|---|
| Baptist Physician Partners, LLC (formerly Baptist Pace Practice, LLC) (Tax ID Transitioned to Baptist Medical Group) | 06/13/07 | 06/13/07 | 09/27/13 |
| Baptist Hospital North Family Practice, LLC | 07/11/08 | 07/11/08 | |
| Baptist Medical Park Surgery Center, LLC | 04/03/98 For Excess Coverage | 04/15/02 | |
| Baptist Urgent Care, Inc. d/b/a Baptist Walk In Care | 01/01/02 | 04/15/02 | 10/31/13 |
| Baptist Urgent Care, LLC (moved from Baptist Health Ventures to Baptist Health) | 11/01/13 | 11/01/13 | |
| Medical Professional Agency, Inc. d/b/a Baptist Business Health Solutions | 01/01/02 | 04/15/02 | |
| Medical Professional Agency, Inc. d/b/a Senior Health (Tax ID Transitioned To Baptist Medical Group) | 01/01/02 | 04/15/02 | 02/01/14 |
| Medical Professional Agency, Inc. d/b/a Baptist Wellness Works | 01/01/13 | 01/01/13 | |
| Andrews Institute, LLC | 09/17/07 | 09/17/07 | 09/24/10 |
| Andrews Institute Medical Park, LLC | 11/10/05 | 11/10/05 | |
| Andrews Institute ASC, LLC | 01/08/05 For Excess Coverage | 01/08/05 For Excess Coverage | |
| Andrews Institute Rehabilitation, LLC | 08/01/07 | 08/01/07 | |
| A.I., LLC (Assets & Liabilities transferred to Lakeview Center, Inc. July 1, 1996 but remains a BHC Corporation) | 12/01/04 | 12/01/04 | 10/01/14 Entity dissolved 09/30/10 |
| Andrews Research and Education Institute (AREI) formerly Andrews-Paulos Research and Education Institute, LLC d/b/a APREI | 12/05/05 | 12/05/05 | |
| Langhorne Cardiology Consultants, Inc. | 01/01/10 | 01/01/10 | |
| Endoscopy Center of Gulf Breeze, LLC | 06/28/05 | 06/28/05 | |
| Baptist Hospital, Inc. d/b/a P.C.C. Student Health Center | 06/02/01 | 04/15/02 | |
| Mobile Diagnostics, Inc. d/b/a ECG Systems, Inc. | 01/01/86 | 04/15/02 | |
| Physicians Laboratories | 01/01/86 | 04/15/02 | |
| Pensacola P.O.B. Incorporated | 01/01/86 | 04/15/02 | |
| The Towers Pharmacy, Inc. | 01/01/86 | 04/15/02 | |
| The Towers Pharmacy, Inc. d/b/a Baptist Medical Park Pharmacy | 01/11/00 | 04/15/02 | |

| Named Insured | Professional Liability Retroactive Date | General Liability Retroactive Date | Ending Date (n/a if blank) |
|---|---|---|---|
| The Friary of Baptist Health Care, Inc. (Assets & Liabilities transferred to Lakeview Center, Inc. July 1, 1996 but remains a BHC corp.) | 01/07/93 | 04/15/02 | |
| Escambia County Alabama Community Hospitals, Inc. (ECACH) Atmore Community Home Care, LLC | 09/26/06 | 09/26/06 | |
| Baptist Hospital, Inc. d/b/a Baptist Home Health Care Durable Medical Equipment and Supplies | 03/01/04 | 03/01/04 | Entity closed and assets sold 07/01/12 |
| Baptist Home Health Care Formerly VNA, affiliated with BHC as result of Lakeview Center, Inc. affiliation July 7, 1996,  Placed under Baptist Hospital January 1, 1997, name changed to Baptist Home Health Care September 1, 2000 | 01/01/97 | 04/15/02 | Entity sold 01/31/11 |
| Baptist Hospital Primary Care, LLC | 11/16/07 | 11/16/07 | Entity dissolved 12/31/10 |
| Pathways for Change, LLC | 01/01/10 | 01/01/10 | 09/01/10 |
| Reflections Medical Spa, LLC d/b/a Portofino Medical Spa | 05/01/04 | 05/01/04 | 12/29/06 |
| Baptist Neonatology LLC | 03/01/04 | 03/01/04 | 05/01/05 |
| Baptist Imaging Center, LLC | 11/07/07 | 11/07/07 | Entity dissolved 12/31/10 |
| Baptist Hospital, Inc. d/b/a U.W.F. Student Health Center | 01/01/86 | 04/15/02 | Disaffiliation 07/31/10 |
| Baptist Medical Park Navarre - Diagnostic Center, LLC | 05/01/00 | 04/15/02 | Entity Dissolved |
| Baptist Medical Park Navarre - Surgery Center, LLC | 05/01/00 | 04/15/02 | Entity Dissolved |
| Azalea Trace, Inc. | 07/01/00 For primary coverage 05/01/00 For excess coverage | 04/15/02 | Entity sold 02/01/03 |
| Gulf Coast Health Technologies, Inc. | 01/01/86 | 04/15/02 | 01/16/03 |
| Gulf Coast Health Cooperative | 01/01/86 | 04/15/02 | Entity Dissolved |
| Doctors Urgent Care Center, Inc. d/b/a North Davis Family Medicine Center (Inactive) | 01/01/86 | 04/15/02 | 12/30/93 |
| Davis Highway Land Partnership (Inactive) | 01/01/86 | 04/15/02 | 12/30/93 |
| Heart-Lung Rehabilitation Center, Inc. (Inactive) | 01/01/86 | 04/15/02 | 02/04/93 |

Endurance American Specialty Insurance Company                    HLC 0103 1208

| **Named Insured** | **Professional Liability Retroactive Date** | **General Liability Retroactive Date** | **Ending Date (n/a if blank)** |
|---|---|---|---|
| Pensacola Retirement Village, Inc. (Inactive) | 01/01/86 | 04/15/02 | 01/31/98 |
| Baptist Health Affiliates, Inc. d/b/a Professional Rehab Affiliates (Inactive) | 01/01/86 | 04/15/02 | 09/24/99 |
| Baptist Home Infusion, Inc. (Inactive) | 01/01/86 | 04/15/02 | 10/16/98 |
| Any other person or entity for whom coverage is required to be provided by Baptist Health Care Corporation or a subsidiary Corporation other than Lakeview Center, Inc. or its subsidiary (Person or Entity) | 01/01/86 | 04/15/02 | |

All other terms and conditions of this policy remain unchanged.

# SERVICE OF SUIT ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

In the event of failure of the Company to pay any amount claimed to be due under the terms of this policy, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of appeal.

It is further agreed that service of process in such suit may be made upon the Senior Vice President - Claims, 750 Third Avenue, 18th Floor, New York, NY 10017.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, as its true and lawful attorney upon whom service may be made of any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Senior Vice President – Claims as the person to whom the said officer is authorized to mail such process or a true copy thereof.

This endorsement does not change any other provision of the policy.

Endurance American Specialty Insurance Company                    HLC 1301 0512

# U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

Endurance American Specialty Insurance Company                    PN-0001-0407

Copyright, Insurance Services, Inc., 2004

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT – REJECTION OF OFFER**

**A.   Rejection of Offer**

You have rejected the offer of terrorism coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act as reauthorized and amended in 2007, as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this policy.

**B.   Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.   **You have rejected this offer of coverage.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission

Endurance American Specialty Insurance Company                                     HLC 1311 0108

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | **Endorsement Effective Date:** | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 1 |

THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.

<u>Underlying Limits – Self Insured Retention</u><br>
<u>Defense Costs and Expenses erode SIR</u>

Section II, General Policy Provisions, Item 2., Underlying Limits is deleted and replaced with the following:

2.        **Underlying Limits**

Any **underlying amounts**, as listed on the Schedule of Underlying Insurance, shall only be reduced or exhausted by the payment of losses, claims or **suits** which would, except for the amount thereof, be covered by this policy and the **insured** shall, in addition thereto, bear all **defense costs and expenses** up until such time as the **underlying amounts** are exhausted, with the following exception:

| Type of Insurance | Hospital Professional Liability including Patient and Non-Patient General Liability, Physicians Professional Liability as well as Employee Benefits Liability |
|---|---|
| Carrier | Self-Insured Retention |
| Policy Period | April 15, 2016 to April 15, 2017 |
| Limits | $2,000,000 Each Medical Incident or Occurrence<br>$2,000,000 Annual Aggregate<br><br>Excess of:<br><br>$3,000,000 Each Medical Incident or Occurrence<br>$9,000,000 Annual Aggregate<br><br>(inclusive of $1,000,000/$3,000,000 per physician) |

The underlying amounts listed above shall be reduced or exhausted by the payment of defense costs and expenses.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | Endorsement Effective Date: | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | Endorsement No.: | 2 |

### THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.

### Cancellation Clause Endorsement
### (Credit Rating Changes)

In consideration of the premium charged, it is hereby understood that III. Conditions, G. Cancellation is amended by adding the following paragraph to the end thereof:

Notwithstanding the foregoing, in the event that a financial strength rating for the Company is issued as follows:

Below any of the following:
A- by A.M. Best Co.
BBB by Standard & Poor's Ratings Services
A by Fitch, or
A-3 by Moody's

This policy may be canceled by the **Named Insured** by mailing written prior notice to the Company or by surrender of this policy to the Company or its authorized agent. If this policy is canceled by the **Named Insured** within 60 days after such rating downgrade, the premium due for the period that the policy was in-force shall not be subject to any annual minimum premium, short rate cancellation or any other penalty. The Insurer agrees that the pro rata proportion of the premium for the in-force period shall apply.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____

Authorized Representative

Endurance American Specialty Insurance Company                    HLC 1001 0606

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | Endorsement Effective Date: | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | Endorsement No.: | 3 |

**THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.**

**Amendment – Renewal Agreement Endorsement**

This endorsement, effective 4/15/16 forms a part of Policy No. HLC10006856901 issued to Baptist Health Care Corporation by Endurance American Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Company will renew, and the **Named Insured** will accept of, this policy as of 4/15/17 subject to the conditions set forth below:

Company Limits of Liability for the Policy Period effective 4/15/17:

| $25,000,000 | Each Occurrence or Medical Incident Limit |
|---|---|
| $25,000,000 | General Aggregate Limit |

**Applicable Underlying Insurance** for the Policy Period effective 4/15/17:

| As per policy issued with an effective date of 4/15/16 |
|---|

It is agreed the **Named Insured** limits of liability and Company limits of liability shall apply separately to each consecutive annual policy year.

Treatment of **Defense Costs and Expenses** for the Policy Period effective 4/15/17:

| As per policy issued with an effective date of 4/15/16 |
|---|

Renewal Additional Premium due as of 4/15/17:

| $422,100 |
|---|

**Terms and Conditions applicable for the Policy Period** 4/15/17:

The terms and conditions of the policy effective 4/15/16 will be incorporated into the Company's policy that goes into effect on 4/15/17 except as modified by the terms of this endorsement. Renewal of the insurance does not affect the applicability of Exclusion P. Known Losses. To be covered under the policy period effective 4/15/16, a loss, claim, or **suit** must be first made and reported to the Company prior to 4/15/17.  Likewise, to be covered under the policy period effective 4/15/17, a loss, claim or **suit** must be first made and reported to the Company prior to 4/15/18.

**Re-underwriting Criteria:**

The following conditions will trigger an underwriting review by the Company and may result in changes to Company limits of liability, **applicable underlying insurance**, terms, conditions and/or the renewal additional premium for the policy period effective 4/15/17.  Any proposed changes that are the outcome of the re-underwriting review would effectively cancel the cancellation penalty shown below.

   1) An increase in second policy year exposures, relative to first policy year exposures, that is equal to or greater than 10% of your total projected exposures as calculated as determined by Baptist's engaged actuary with Total Exposure as the exposure unit measured.  As a baseline, the Total Exposure agreed upon for the effective date of 4/15/16 is 1,198.

   2) An increase equal to or greater than 20% of the total incurred **Ultimate net losses** for the policy years 4/15/10 to 4/15/15 as detailed in the 2016 submission file named, "gl pl claims 1991-2015".  For the purpose of the comparison, it is agreed any one single **Ultimate net loss** that exceeds $1,000,000 will be capped at $1,000,000.  Based on this criteria, the agreed upon total incurred **Ultimate net losses** figure on 4/15/16 is $5,516,492.  For the purpose of this comparison, we will recalculate the same policy years of 4/15/10 to 4/15/15 90 days prior to 4/15/17;

   3)  Payment of any one **occurrence** or **medical incident** that exceeds $5 million of total paid indemnity and expenses within the timeframe of 90 days prior to 4/15/16 to 90 days prior to 4/15/17  regardless of when the **occurrence** or **medical incident** was incurred or reported.;

   4) There has been a change in law (including insurance regulation) or insurance regulatory action which prevents the Company from issuing a renewal policy at the same terms and conditions as this Policy;

   5) There is a material change in:
- Your operations
- Claims adjudication practices or risk management department

   In lieu of specifically defining Item 5. above, the Company agrees that an assessment of these items will be made by the Company by 90 days prior to 4/15/17.  If the Company believes there is a material change in any of the criteria listed in Item 5. and subsequently re-underwrites the coverage provided, and the result is not acceptable to the **Named Insured**, the renewal policy, effective 4/15/17, may be terminated without any cancellation penalty at the conclusion of the first policy period.

**Cancellation Penalty applicable to the terms of this Renewal Agreement Endorsement:**

A cancellation penalty will be required in the event the **Named Insured** cancels either policy period.  A cancellation penalty would be equal to the normal short rate penalty plus 5% applicable to the policy period(s) being cancelled.  This cancellation penalty would not be triggered in the event changes due to re-underwriting (Items 1-5. above) are unacceptable to **Named Insured**.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

                                     _____
                                       Authorized Representative

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | **Endorsement Effective Date:** | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 4 |

**THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.**

**Amendment of Limits of Liability – Separate Aggregate Towers**

Section II, General Policy Provisions, Item 1. Limits of Liability amended as follows:

1.    **Limits of Liability**

    A.    Our liability for **ultimate net loss** under this policy, regardless of the number of persons or organizations who are **insureds**, the number of coverages provided by the attached Coverage Part(s), or the number of losses or claims made or **suits** brought against any and all i**nsureds**, shall be determined as follows:

        i.    The Each Occurrence or Medical Incident Limit set forth in Item 3(a) of the Declarations is the most we will pay for any one **occurrence** or **medical incident**.  Should any single event result in both an **occurrence** and a **medical incident** for which coverage is provided by the terms and conditions of the coverage parts of this policy, our total liability for such single event shall not exceed the amount stated as the Each Occurrence or Medical Incident Limit;

        ii.    Subject to paragraph (i) above, our liability for **ultimate net loss** arising from Section I Coverage A – **Umbrella Claims Made Professional Liability** – shall not exceed the amount indicated as Aggregate Limits, as stated in Item 3(b) of the Declarations

        iii.    Subject to paragraph (i) above, our liability for **ultimate net loss** arising from Section I. Coverage B – **Umbrella Occurrence General Liability**, shall not exceed the amount indicated as Aggregate Limits, as stated in Item 3(b) of the Declarations.

    The aggregate limits as stated in Item 3(b) of the Declarations will apply separately to (ii) and (iii) above.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____

Authorized Representative

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | **Endorsement Effective Date:** | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 5 |

### THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.

### Supplemental Reimbursement Coverage(s) Endorsement

LIMITS OF LIABILITY

A)  Evacuation Expense Reimbursement
Limit of Liability:                                          $50,000
Deductible/Self Insured Retention:               $ 5,000

B)  Disinfection Expense Reimbursement
Limit of Liability:                                          $50,000
Deductible/Self Insured Retention:               $ 5,000

C)  Abduction Reimbursement
Limit of Liability:                                          $50,000
Deductible/Self Insured Retention:               $ 5,000

Subject to all of the terms and conditions of this endorsement, the **Underwriter** and the **Named Insured** agree as follows:

I.       INSURING AGREEMENTS

(A)      Evacuation Expense Reimbursement Insurance:

Upon satisfactory proof of payment by the **Named Insured**, the **Underwriter** will reimburse the **Named Insured** up to the amount set forth in ITEM A) of the Limits of Liability for **Evacuation Expense** actually paid by the **Named Insured** during the **Agreement Period** in connection with an **Evacuation** occurring during the **Agreement Period**.

(B)      Disinfection Expense Reimbursement Insurance:

Upon satisfactory proof of payment by the **Named Insured**, the **Underwriter** will reimburse the **Named Insured** up to the amount set forth in ITEM B) of the Limits of Liability for **Disinfection Expense** actually paid by the **Named Insured** during the **Agreement Period** in connection with a **Disinfection Event** occurring during the **Agreement Period**.

Endurance American Specialty Insurance Company                                            HLC 1001 0606

(C)     Abduction Reimbursement Insurance:

Upon satisfactory proof of payment by the **Named Insured**, the **Underwriter** will reimburse the **Named Insured** up to the amount set forth in ITEM C) of the Limits of Liability for **Abduction Expense** actually paid by the **Named Insured** during the **Agreement Period** in connection with an **Abduction** occurring during the **Agreement Period**.

II.     DEFINITIONS APPLICABLE TO ALL COVERAGE PARTS OF THIS ENDORSEMENT

(A)     **Abduction** means the wrongful **Abduction** of a **Covered Child** by any person or group, other than a **Parent**, from any of the **Named Insured's** facilities.

(B)     **Abduction Expenses** means:

(1)     Reasonable fees and expenses of an independent detective agency retained to locate a **Covered Child** following the **Abduction** of such **Covered Child**;

(2)     Reasonable fees and expenses of an independent public relations consultant incurred solely and directly in connection with, during the period of, and up to the maximum of thirty (30) days after, an **Abduction**;

(3)     Reasonable cost of publicity incurred to locate a **Covered Child** following the **Abduction** of such **Covered Child**;

(4)     Reasonable expenses for travel and accommodation occurred by the **Parent(s)** of a **Covered Child** during the period of the **Abduction** of such **Covered Child** and solely and directly resulting from such **Abduction;**

(5)     Other reasonable and necessary expenses incurred by the **Parent**(s) of a **Covered Child** during the period of the **Abduction** of such **Covered Child** and solely and directly resulting from such **Abduction**;

(6)     The salary of the **Parent(s)** of a **Covered Child** until seven (7) days after the **Covered Child's** release or twelve (12) months after the date of the **Abduction** of such **Covered Child**, whichever occurs first, if the employer(s) of such **Parent**(s) fail to pay such salary;

(7)     Costs of psychiatric counseling incurred by and for the benefit of the **Parent**(s) of a **Covered Child** for twelve (12) months after the date of the **Abduction** of such **Covered Child**, but not including any remuneration, salaries, overhead, or benefits expenses of the Insured;

(8)     Costs of psychiatric counseling incurred by and for the benefit of a **Covered Child** for twelve (12) months after the date of the **Abduction** of such **Covered Child**, but not including any remuneration, salaries, overhead, or benefits expenses of the **Named Insured**; and

(9)     A reward paid to any natural person who provided information not otherwise available leading to the location of an abducted **Covered Child** and the arrest and conviction of the

person(s) or group responsible for such **Abduction**, if the offer of such reward is approved by law enforcement officials.

(C)   **Agreement Period** means the period from the Inception Date of this Agreement stated in Item 2 of the Declarations to the Expiration Date of this Agreement stated in Item 2 of the Declarations or to any earlier cancellation date of this Agreement.

(D)   **Covered Child** means a child up to the age of seven (7) years.

(E)   **Covered Expense** means any **Evacuation Expense**, **Disinfection Expense** or **Abduction Expense** actually paid by the **Named Insured** as a result of any **Evacuation**, **Disinfection Event** or **Abduction** that occurs during the **Agreement Period**.

(F)   **Disinfection Event** means any case or series of cases of the MRSA virus or other facility-borne infectious virus, bacteria or disease that requires reporting of such case or series of cases to any local, state or federal governmental or healthcare oversight agency or entity.

(G)   **Disinfection Expense** means reasonable fees and costs incurred by the **Named Insured** to clean and disinfect the **Named Insured**'s facility after any **Disinfection Event**. **Disinfection Expense** includes costs (a) to engage third party providers of cleaning/disinfection services; (b) to notify patients/residents, visitors or other potentially affected persons; and (c) incurred in the management of public relations with respect to such **Disinfection Event**. **Disinfection Expense** does not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of the **Named Insured**, or cost of cleaning/disinfecting supplies or products.

(H)   **Evacuation** means the removal from one or more of the **Named Insured**'s facilities to any other location of a majority of the patients of such facility(ies) as a result of any natural or man-made occurrence that, in the reasonable judgment of the **Named Insured**'s management, causes or could potentially cause such facility(ies) to be unsafe for such patients.

(I)   **Evacuation Expense** means reasonable costs incurred in connection with an **Evacuation**, including costs associated with transporting and lodging patients who have been evacuated. **Evacuation Expense** does not include any remuneration, salaries, overhead or benefit expenses of the **Named Insured**.

(J)   **Parent** means the individual(s) recognized by a court of competent jurisdiction to have legal custody of a **Covered Child**.

(K)   **Ransom** means cash surrendered by or on behalf of the **Named Insured** to meet a demand for the release of a **Covered Child** who has been the subject of an **Abduction.**

(L)   **Underwriter** means Endurance American Specialty Insurance Company.

III.   EXCLUSIONS

(A)     Exclusions Applicable to INSURING AGREEMENT I. (C) OF THIS ENDORSEMENT:

In addition to the EXCLUSIONS listed under (B) below, no coverage will be available under INSURING AGREEMENT (C), and the **Underwriter** will not pay **Covered Expense** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any:

(1)     losses caused by any fraudulent, dishonest or criminal act of the **Named Insured** or any **Parent**, whether acting alone or in collusion with others;

(2)     **Ransom**; or

(3)     **Abduction Expenses** for which the **Named Insured** has coverage under any other insurance Agreement, regardless of whether such Agreement is stated to be primary, contributory, excess, contingent, or otherwise.

(B)     Exclusions Applicable to All INSURING AGREEMENTS OF THIS ENDORSEMENT:

Except as otherwise expressly provided in this Agreement, this Agreement does not apply to, and the **Underwriter** will not pay **Covered Expense** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any:

(1)     **Evacuation**, **Disinfection Event** or **Abduction** that happened before the Inception Date of this Agreement;

(2)     dishonest, fraudulent, criminal or intentionally malicious act, error or omission by a **Named Insured**; or any willful violation of law, statute, rule or regulation by a **Named Insured**;

(3)     obligation which a **Named Insured** has assumed under a written or oral contract or agreement; except this EXCLUSION (3) will not apply to liability a **Named Insured** would have had in the absence of such contract or agreement;

IV.     GENERAL CONDITIONS OF THIS ENDORSEMENT

(A)     Limits of Liability

(1)     Insuring Agreement A – Evacuation Expense Reimbursement

The amount stated in ITEM A. of the Limits of Liability will be the **Underwriter**'s maximum Limit of Liability for all **Covered Expense** for which this Agreement provides coverage under INSURING AGREEMENT I. (A).

(2)     Insuring Agreement B – Disinfection Expense Reimbursement

The amount stated in ITEM B) of the Limits of Liability will be the **Underwriter**'s maximum Limit of Liability for all **Covered Expense** for which this Agreement provides coverage under INSURING AGREEMENT I.  (B).

(3)     Insuring Agreement C – **Abduction Expense** Reimbursement

The amount stated in ITEM C of the Limits of Liability will be the **Underwriter**'s maximum Limit of Liability for all **Covered Expense** for which this Agreement provides coverage under INSURING AGREEMENT I. (C).

(4)     The **Named Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in the Limits of Liability, and the **Underwriter**'s obligation to reimburse the **Named Insured** for **Covered Expense** under this Agreement shall be excess of such deductible or self-insured retention.

(5)     All **Named Insured**s under this Agreement share the applicable Limit of Liability.

(B)     Reporting of Covered Expense:

In the event that the **Named Insured** incurs **Covered Expense**, the **Named Insured** shall give the **Underwriter** written notice thereof as soon as practicable thereafter. Such notice shall give the full particulars of the **Evacuation**, **Disinfection Event** or **Abduction**, as applicable, including but not limited to, information on the time and place of the event, a description of the event, the identity of the **Named Insured** involved, and any other salient facts or information concerning the event.

(C)     Cancellation; Non-Renewal:

(1)     The **Underwriter** may cancel this Agreement by mailing or delivering a written notice of cancellation to the First **Named Insured** stating when, not less than sixty (60) days thereafter, cancellation will be effective. In the event of non-payment of premium, the **Underwriter** may cancel this Agreement by mailing or delivering a written notice of cancellation to the First **Named Insured** stating when, not less than ten (10) days thereafter, cancellation will be effective.

(2)     The First **Named Insured** may cancel this Agreement by mailing the **Underwriter** written notice stating when, not later than the Expiration Date set forth in Item 2 of the Declarations, such cancellation will be effective.

(3)     If the **Underwriter** cancels the Agreement, the unearned premium will be computed prorate. If the First **Named Insured** cancels the Agreement, the unearned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(4)     The **Underwriter** will not be required to renew this Agreement upon its expiration.

(D)   Other Insurance:

Any **Covered Expense** insured under any other insurance Agreement shall be paid first by such Agreement. It is the intent of this Agreement to apply only to **Covered Expense** that is more than the total limit of all deductibles, limits of liability, self-insured amounts or other insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, fronting or otherwise and whether or not collectible. These provisions do not apply to other insurance policies or risk transfer arrangements written as specific umbrella or excess insurance over the Limit of Liability of this Agreement. This Agreement shall not be subject to the terms of any other Agreement of insurance or plan or program of self-insurance; and in no event will the **Underwriter** pay more than the applicable Limit of Liability set forth in Limits of Liability.

(E)   Exhaustion:

If the **Underwriter**'s Limit of Liability is exhausted by the payment of **Covered Expense**, the premium will be fully earned, all obligations of the **Underwriter** under this Agreement will be completely fulfilled and exhausted, and the **Underwriter** will have no further obligations of any kind or nature whatsoever under this Agreement.

(F)   Authorization and Notices:

The First **Named Insured** will act on behalf of all **Named Insured**s with respect to the giving or receiving of any notices under this Agreement; the payment of premiums to, and receiving of return premiums from, the **Underwriter**; and the receiving and acceptance of any endorsements issued to form a part of this Agreement.

(G)   Notice:

Notice to any **Named Insured** shall be sent to the First **Named Insured** at the address designated in Item 1 of the Declarations. Notice to the **Underwriter** shall be sent to:

Claims Department of Endurance Specialty Insurance Marketing Corporation, 725 S. Figueroa St., Suite 2100, Los Angeles, CA 90017, or Telephone: (213) 270-7017 or Fax: (213) 270-7800 or E-Mail addressed to:  Eclaims@enhinsurance.com,

(H)   Changes:

This Agreement can only be altered, waived, or changed by written endorsement issued to form a part of this Agreement.

(I)   Assignment:

No assignment of interest under this Agreement shall bind the **Underwriter** without its written consent issued as an endorsement to form a part of this Agreement.

Endurance American Specialty Insurance Company                    HLC 1001 0606

(J)     Entire Agreement:

The **Named Insured** agrees that this Agreement, including any endorsements, constitutes the entire agreement between them and the **Underwriter** or any of its agents relating to this insurance.

(K)     Headings:

The descriptions in the headings and sub-headings of this Agreement are solely for convenience, and form no part of the terms and conditions of coverage.


Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
                Authorized Representative

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | **Endorsement Effective Date:** | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 6 |

### THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.

#### Umbrella Claims Made General Liability Endorsement

Section I, Insuring Agreement, Section B., Umbrella Occurrence General Liability is deleted and replaced with the following:

**B.      Umbrella Claims Made General Liability**

**We** will indemnify you, subject to the Limits of Liability set forth in the Declarations, for **Ultimate Net Loss**, including **Defense Costs and Expenses** in excess of the **Applicable Underlying Insurance**, which you become legally obligated to pay as a result of a Claim alleging **Bodily Injury, Property Damage or Personal or Advertising Injury** caused by an **Occurrence**; provided always that:

1.  such Claim for **Bodily Injury, Property Damage or Personal or Advertising Injury** is first made against you during the Policy Period or any applicable Extended Reporting Period; and

2.  notice of such Claim is given to us in accordance with the terms of this Policy.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | **Endorsement Effective Date:** | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | **Endorsement No.:** | 7 |

THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.

**EMPLOYEE BENEFIT LIABILITY ENDORSEMENT-CLAIMS-MADE COVERAGE**

This Endorsement removes Exclusion K. from the Policy.  The following coverage section is added to the Policy.

Underlying Amount:

$2,000,000 each occurrence/$2,000,000 aggregate shared buffer with Hospital Professional Liability, Patient General Liability and Non-Patient General Liability xs of $3,000,000 each employee/$9,000,000 aggregate except:

$1,000,000 each employee/$3,000,000 aggregate–applies to Andrews Institute Ambulatory Surgery Center

Retroactive Date: April 15, 2002, except
            November 1, 2006 applies to Andrews Institute Ambulatory Surgery Center

A.    **SECTION I.  INSURING AGREEMENT**

**We** will indemnify you, subject to the Limits of Liability set forth in this Endorsement, for **Ultimate Net Loss**, including **Defense Costs and Expenses** in excess of the **Applicable Underlying Insurance**, which you become legally obligated to pay as a result of a Claim alleging negligence in the **Administration** of your **Employee Benefit Program**, provided always that:

        1.      such Claim is first made against you during the Policy Period or any applicable Extended Reporting Period; and

        2.      notice of such Claim is given to us in accordance with the terms of this Policy.

B.    **EXCLUSIONS**

This insurance does not apply to:

        1.      **Available Benefits**

Any Claim for benefits to the extent that said benefits are available, with reasonable cooperation from the Insured, from applicable accrued funds or other collectible insurance.

2.        **Bodily Injury, Property Damage, Personal or Advertising Injury**

Any Claim that arises out of any **Bodily Injury, Property Damage, Personal or Advertising Injury.**

3.        **Contractual Liability**

Any Claim that arises out of or results from any obligation of any Insured to pay damages by reason of the assumption of liability in a contract or agreement.

4.        **Criminal Acts**

Any Claim brought about or contributed to by any dishonest  or fraudulent act or omission committed by or at the direction of any Insured; any willful violation of any statute, rule or law; or the gaining by any Insured of any profit, remuneration or advantage to which such Insured is not legally entitled.  The determination of the applicability of this Exclusion must be established by an admission, final adjudication or finding in a proceeding constituting a Claim under the Policy or any proceeding separate from or collateral to the Claim.

5.        **Employment Practices Liability**

Any costs, fines or other liability arising out of a Claim alleging:

(i)        refusal to employ;

(ii)        termination of employment;

(iii)        coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions; or

(iv)        consequential **bodily injury, property damage, personal** or **advertising injury** or **medical incident** as a result of any acts described in parts (i), (ii) or (iii) of this Exclusion; or

(v)        the National Labor Relations Act (29 U.S.C. 151 et seq.), or related statutes or any law, statute or regulation of any jurisdiction similar to the foregoing, or arising as a result of a dispute with any labor union or labor organization, including, but not limited to, a lockout, strike, picket line, the hiring of replacement workers, outsourcing or other similar actions, or arising out of a collective bargaining or other similar agreement.

6.        **ERISA**

Any violation or alleged violation of the Employee Retirement Income Security Act of 1974 or any amendment or addition thereto or similar provisions of any federal, state or local law.

7.        **Insufficient Funds**

Damages arising from an insufficiency of funds to fulfill any obligations under any plan included in the **Employee Benefit Program**.

Endurance American Specialty Insurance Company                                        HLC 1001 0606

8.     **Inadequacy of Performance of Investments**

Any Claim that arises from any investment, investment program or individual security or from the failure to perform of any investment, investment program or individual security.

9.     **Investment Advice**

Any Claim that arises from errors or omissions in giving or failing to give opinions, statements or advice regarding participating in or not participating in any investment program.

10.     **Taxes, Fines or Penalties**

Any taxes, fines or penalties, including, but not limited to, those imposed by the Internal Revenue Service or similar state or local entities.

11.     **Workers' Compensation and Similar Laws**

Any Claim that arises from a failure to comply with workers' compensation, unemployment compensation, disability benefits, social security laws or any other similar or related laws.

C.     **DEFINITIONS**

For the purposes of the coverage provided by this Endorsement, the following definitions are added or altered:

1.     **Administration** means:

(a)     counseling of **Employees** and their beneficiaries regarding their eligibility for the **Employee Benefit Program**;
(b)     record keeping in connection with the **Employee Benefit Program**;
(c)     enrolling, continuing, cancelling or terminating the participation of any **Employee** or beneficiary in the **Employee Benefit Program.**


2.     **Employee Benefit Program** means:

(a)     group life insurance, group health insurance, including dental, vision, and hearing plans, and flexible spending accounts when provided to eligible **Employees**;
(b)     profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans when provided to eligible **Employees**;
(c)     workers' compensation and disability benefits, unemployment insurance and social security benefits; and

(d)     vacation plans, leave of absence plans (including military leave, maternity leave, and family leave), tuition assistance plans, and transportation and health club subsidies.

3.     **Suit** means:

A civil proceeding in which damages because of an act, error or omission to which this coverage applies is alleged.  A suit includes, but is not limited to, an arbitration proceeding or other alternative dispute resolution in which damages are claims.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

Endurance American Specialty Insurance Company                    HLC 1001 0606

# GENERAL CHANGE ENDORSEMENT

| Named Insured: | Baptist Health Care Corporation | | |
|---|---|---|---|
| Policy No.: | HLC10006856901 | Endorsement Effective Date: | April 15, 2016 |
| Issued By: | Endurance American Specialty Insurance Company | Endorsement No.: | 3 |

**THIS ENDORSEMENT CHANGES THIS POLICY, PLEASE READ IT CAREFULLY.**

**<u>Amendment – Renewal Agreement Endorsement</u>**

This endorsement, effective 4/15/16 forms a part of Policy No. HLC10006856901 issued to Baptist Health Care Corporation by Endurance American Specialty Insurance Company.

In consideration of the premium charged, it is agreed that the Company will renew, and the **Named Insured** will accept of, this policy as of 4/15/17 subject to the conditions set forth below:

Company Limits of Liability for the Policy Period effective 4/15/17:

| | |
|---|---|
| $25,000,000 | Each Occurrence or Medical Incident Limit |
| $25,000,000 | General Aggregate Limit |

**Applicable Underlying Insurance** for the Policy Period effective 4/15/17:

| |
|---|
| As per policy issued with an effective date of 4/15/16 |

It is agreed the **Named Insured** limits of liability and Company limits of liability shall apply separately to each consecutive annual policy year.

Treatment of **Defense Costs and Expenses** for the Policy Period effective 4/15/17:

| |
|---|
| As per policy issued with an effective date of 4/15/16 |

Renewal Additional Premium due as of 4/15/17:

| |
|---|
| $422,100 |

**<u>Terms and Conditions applicable for the Policy Period</u>** 4/15/17:

The terms and conditions of the policy effective 4/15/16 will be incorporated into the Company's policy that goes into effect on 4/15/17 except as modified by the terms of this endorsement. Renewal of the insurance does not affect the applicability of Exclusion P. Known Losses. To be covered under the policy period effective 4/15/16, a loss, claim, or **suit** must be first made and reported to the Company prior to 4/15/17.  Likewise, to be covered under the policy period effective 4/15/17, a loss, claim or **suit** must be first made and reported to the Company prior to 4/15/18.

**Re-underwriting Criteria:**

The following conditions will trigger an underwriting review by the Company and may result in changes to Company limits of liability, **applicable underlying insurance**, terms, conditions and/or the renewal additional premium for the policy period effective 4/15/17.  Any proposed changes that are the outcome of the re-underwriting review would effectively cancel the cancellation penalty shown below.

1) An increase in second policy year exposures, relative to first policy year exposures, that is equal to or greater than 10% of your total projected exposures as calculated as determined by Baptist's engaged actuary with Total Exposure as the exposure unit measured.  As a baseline, the Total Exposure agreed upon for the effective date of 4/15/16 is 1,198.

2) An increase equal to or greater than 20% of the total incurred **Ultimate net losses** for the policy years 4/15/10 to 4/15/15 as detailed in the 2016 submission file named, "gl pl claims 1991-2015".  For the purpose of the comparison, it is agreed any one single **Ultimate net loss** that exceeds $1,000,000 will be capped at $1,000,000.  Based on this criteria, the agreed upon total incurred **Ultimate net losses** figure on 4/15/16 is $5,516,492.  For the purpose of this comparison, we will recalculate the same policy years of 4/15/10 to 4/15/15 90 days prior to 4/15/17;

3)  Payment of any one **occurrence** or **medical incident** that exceeds $5 million of total paid indemnity and expenses within the timeframe of 90 days prior to 4/15/16 to 90 days prior to 4/15/17  regardless of when the **occurrence** or **medical incident** was incurred or reported.;

4) There has been a change in law (including insurance regulation) or insurance regulatory action which prevents the Company from issuing a renewal policy at the same terms and conditions as this Policy;

5) There is a material change in:
- Your operations
- Claims adjudication practices or risk management department

In lieu of specifically defining Item 5. above, the Company agrees that an assessment of these items will be made by the Company by 90 days prior to 4/15/17.  If the Company believes there is a material change in any of the criteria listed in Item 5. and subsequently re-underwrites the coverage provided, and the result is not acceptable to the **Named Insured**, the renewal policy, effective 4/15/17, may be terminated without any cancellation penalty at the conclusion of the first policy period.

**Cancellation Penalty applicable to the terms of this Renewal Agreement Endorsement:**

A cancellation penalty will be required in the event the **Named Insured** cancels either policy period.  A cancellation penalty would be equal to the normal short rate penalty plus 5% applicable to the policy period(s) being cancelled.  This cancellation penalty would not be triggered in the event changes due to re-underwriting (Items 1-5. above) are unacceptable to **Named Insured**.

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above stated.

_____
Authorized Representative

Endurance American Specialty Insurance Company                                    HLC 1001 0606