UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**SHARRIF K. FLOYD**, individually
and as assignee of The Andrews
Institute Ambulatory Surgery Center,
LLC,

    **Plaintiff**,

v.                                                          Case No. 3:23cv10244-TKW-ZCB

**TDC SPECIALTY INSURANCE
COMPANY**,

    **Defendant**.
_____/

**ORDER GRANTING JUDGMENT
ON THE PLEADINGS FOR DEFENDANT**

This case is before the Court based on the parties' cross-motions for judgment on the pleadings (Docs. 61, 64). Upon due consideration of the motions, the responses, and the pleadings, the Court finds that Defendant is entitled to judgment on the pleadings.

**Background**

Plaintiff is a former professional football player who underwent a knee surgery at The Andrews Institute Ambulatory Surgery Center (Andrews) in September 2016. Complications from the surgery effectively ended Plaintiff's football career.

Plaintiff filed a medical malpractice suit against Andrews in state court in November 2018. The suit settled in 2022 for a confidential amount "in excess of $27 million." As part of the settlement, Andrews assigned any claims it had against its insurers and insurance brokers to Plaintiff.

Andrews had $27 million of professional liability insurance coverage during the 2016-17 and 2017-18 policy periods,[1] but the makeup of the coverage was different for each period:

- For 2016-17, Andrews had a $2 million primary policy through non-party Arch Specialty Insurance Company (Arch) and a $25 million excess policy through former defendant Endurance American Specialty Insurance Company (Endurance).

- For 2017-18, Andrews had a $2 million primary policy through Defendant TDC Specialty Insurance Company (TDC), a $15 million excess policy through Endurance, and an additional $10 million excess policy through TDC.

Plaintiff has received $20 million of the settlement—$17 million in insurance proceeds ($2 million from Arch and $15 million from Endurance under its 2017-18

---

[1] The 2016-17 policy period ran from April 15, 2016, to April 15, 2017, and the 2017-18 policy period ran from April 15, 2017, to April 15, 2018.

2

excess policy) and $3 million directly from Andrews.  However, the rest of the settlement "remains due and owing."

In January 2023, Plaintiff filed suit in this court against Endurance, TDC, and two insurance brokers—former defendants USI Insurance Services, LLC (USI) and Marsh USA, Inc. (Marsh).  The operative amended complaint (Doc. 21) sought a declaratory judgment regarding Endurance's coverage obligation under its 2016-17 excess policy, a declaratory judgment regarding TDC's coverage obligation under its excess policy, and damages from USI and Marsh under various legal theories (breach of contract, breach of fiduciary duty, negligence) for their failure to secure the $27 million in coverage that Andrews thought it had for Plaintiff's claim.

In June 2023, the Court dismissed the claims against Endurance with prejudice because Plaintiff could not show that Andrews (or anyone else) provided timely notice of Plaintiff's claim to Endurance under its 2016-17 excess policy.  *See* Doc. 50 at 8-14.[2]  The Court dismissed the claims against USI and Marsh without prejudice because those claims are premature until it is determined that Andrews did not have the $27 million in coverage for Plaintiff's claims that it thought it had.  *Id.* at 14-20.  Thus, the only remaining claim in this case is Plaintiff's declaratory judgment claim regarding TDC's coverage obligations under its excess policy.

---

[2] Judgment was thereafter entered in favor of Endurance under Fed. R. Civ. P. 54(b), *see* Doc. 56, and Plaintiff did not appeal the judgment.

3

In September 2023, Plaintiff filed a motion for judgment on the pleadings in which he argued that there are no material facts in dispute and that he is entitled to judgment as a matter of law because the pleadings and their attachments show that his claim is covered by the TDC excess policy. TDC responded with a cross-motion for judgment on the pleadings in which it agreed that that there are no material facts in dispute but argued that it (not Plaintiff) is entitled to judgment as a matter of law because the pleadings and their attachments show that Plaintiff's claim is not covered by the TDC excess policy.

The motions are fully briefed and are ripe for rulings. No hearing is needed to rule on the motions.[3]

## Standard of Review

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). When reviewing a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving

---

[3] The Court did not overlook TDC's request for oral argument, *see* Doc. 64 at 19, but the Court sees no need for it. *See* N.D. Fla. Loc. R. 7.1(K) ("The Court may—and most often does—rule on a motion without oral argument, even if a party requests oral argument.").

party's pleading, and … view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

Here, the parties agree that there are no material facts in dispute and that the determination of which party is entitled to judgment on the pleadings turns on the proper interpretation of the insurance policies attached to the complaint. The proper interpretation of an insurance policy is an issue of law for the Court. *See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017); *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). Thus, this case can be resolved with a judgment on the pleadings.

"The cardinal principle [governing the interpretation of insurance policies under Florida law] is that a policy's text is paramount: Florida courts start with the plain language of the policy, as bargained for by the parties." *Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*, 65 F.4th 623, 627 (11th Cir. 2023) (internal quotations omitted). "If the policy's language is unambiguous, it governs—end of story." *Id.* (internal quotations omitted). But, if the policy's language is ambiguous, "any ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer." *Id.* at 628 (quoting *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017)).

## Applicable Policy Language

The Insuring Agreement in the TDC excess policy provides in pertinent part that TDC will pay:

> any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable **underlying insurance** which an **insured**[4] is legally obligated to pay as result of a covered **claim**; provided, that:
>
> (A)  such **underlying insurance** also applies and has been exhausted by actual payment thereunder …"
>
> (B)  this Policy will apply in conformance with, and will follow the form of, the terms and conditions of the **primary policy** (including all endorsements thereto), and to the extent coverage is further limited or restricted by any other **underlying insurance**, of such **underlying insurance**, except:
>
> \*   \*   \*
>
> (3)  the coverage provided by this Policy shall not be broader than any **underlying insurance** unless expressly provided in this Policy ….

Doc. 21-5 at 6 (bold in original).

The policy defines "underlying insurance" to "mean[] the **primary policy** and all insurance policies … scheduled in ITEM 4 of the Declarations …." *Id.* at 7 (bold in original).  ITEM 4(A) of the Declarations lists the TDC primary policy as one of

---

[4] The named insured under the TDC excess policy is Baptist Health Care Corporation (Baptist), *see* Doc. 21-5 at 4, but the policy defined the term "insured" to mean "any person or entity included within the definition of 'Insured' (or similar term) in the applicable **underlying insurance**," *id.* at 5 (bold in original).  Andrews is affiliated with Baptist and is the named insured under the TDC primary policy, *see* Doc. 21-3, and that policy is "underlying insurance" for the TDC excess policy, *see* Doc. 21-5 at 7, so Andrews is an "insured" under the TDC excess policy.

6

the primary policies, *id.* at 12,[5] and ITEM 4(B) lists the Endurance 2017-18 excess policy as underlying insurance, *id.* at 13.

The TDC excess policy includes an endorsement ("Endorsement No. 4"), which states that that "this Policy will apply in conformance with, and will follow the form of," the Renewal Agreement Endorsement to the Endurance 2017-18 excess policy. *Id.* at 16. The endorsement overrides any conflicting terms and conditions in the TDC excess policy, *see Herrington v. Certain Underwriters at Lloyd's London*, 342 So. 3d 767, 769 (Fla. 4th DCA 2022) (quoting *Allstate Fire & Cas. Ins. Co. v. Hradecky*, 208 So. 3d 184, 187 (Fla. 3d DCA 2016)), but "[a]ll other terms, conditions and limitations of th[at] Policy shall remain unchanged," Doc. 21-5 at 16.

The Renewal Agreement Endorsement to the Endurance 2017-18 excess policy states in pertinent part that:

> [t]he terms and conditions of the policy effective 4/15/17 will be incorporated into the Company's policy that goes into effect on 4/15/18 except as modified by the terms of this endorsement. Renewal of the insurance does not affect the applicability of Exclusion P. Known Losses. To be covered under the policy period effective 4/15/17, a loss, claim, or **suit** must be first made and reported to the Company prior to 4/15/18.

Doc. 21-4 at 54 (bold in original). Exclusion P in the Endurance 2017-18 excess policy provides in pertinent part that:

---

[5] Other policies listed under ITEM 4(A) were for other affiliates of Baptist or were for different types of insurance for Andrews (e.g., general liability, employee benefits liability). None of those other policies apply to Plaintiff's claim.

7

> This Policy excludes coverage for any **medical incident** or **occurrence**, claim …:
>
> (i) that was the subject, in whole or in part, of any notice to any insurer prior to the inception date of coverage under this agreement;
>
> (ii) that was known to any risk management, legal or insurance personnel, peer review committee or their designees prior to the commencement date of coverage under this agreement that was reported or should have been reported to any other insurer prior to the commencement date of this Policy.
>
> If this Policy is a renewal of an agreement previously issued by us, and the coverage provided by us to you was continuously and without interruption in effect for the entire time between the inception of the date of the first such Policy and the inception date of coverage under this Policy, the reference in this Policy to the inception date above shall be deemed to refer to the inception date of the first policy under which we began to provide you with the continuous and uninterrupted coverage of which this Policy is a renewal.

*Id.* at 13-14 (bold in original).

## Analysis

The parties' cross-motions frame two key issues for resolution: first, whether TDC is obligated to pay Plaintiff's claim based on the language of the Insuring Agreement in its excess policy, and second, whether TDC is obligated to pay Plaintiff's claim based on the language of the Renewal Endorsement Agreement to the Endurance 2017-18 excess policy that is effectively incorporated by reference into the TDC excess policy through Endorsement No. 4.  Each issue will be discussed in turn.

8

Insuring Agreement

The Insuring Agreement in the TDC excess policy obligated TDC to pay up to $10 million for any settlement in excess of the policy limits of the "applicable underlying insurance" that Andrews was obligated to pay as a result of a covered claim, provided that certain conditions in the Insuring Agreement are met. Most pertinent here, those conditions include paragraph (A), which requires that the underlying insurance "applies and has been exhausted by actual payment," and paragraph (B)(3), which states that the coverage is subject to the terms and conditions of the primary policy or other more restrictive underlying insurance and "shall not be broader than any underlying insurance." Neither condition is met with respect to Plaintiff's claim.

With respect to paragraph (A), the pleadings establish that the "applicable" underlying insurance was not exhausted by actual payment because even though Endurance paid the policy limits on its 2017-18 excess policy, TDC did not pay anything on its primary policy. The Court did not overlook Plaintiff's argument that the TDC primary policy did not "apply" so it need not have been exhausted, but the Court finds that argument unpersuasive because it conflates the issue of whether a policy "applies" to a claim with the issue of whether the claim is "covered" under the policy. *See Penn. Nat. Mut. Cas. Ins. Co. v. Se. Env't Infrastructure, LLC*, 416 F. App'x 835, 838 (11th Cir. 2011) (recognizing this distinction when stating in a

9

slightly different context that "[t]he underlying insurance here (the CGL policy) clearly applied to the occurrence, but simply provided no coverage because of the lack of notice").  Here, the pleadings establish that the TDC primary policy "applies" to Plaintiff's claim in the sense that it is the type of claim that the policy is intended to cover (i.e., professional malpractice) and it was reported to TDC during the policy period.  The fact that the claim was subject to exclusions in the policy (and, thus, not covered) does not mean that the policy did not "apply" to Plaintiff's claim under the ordinary meaning of that term.  *See, e.g.,* Webster's Seventh New Collegiate Dictionary, at 43 (1965) (defining "apply" to mean "to have relevance"); Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/apply (defining "apply" to mean "to have relevance or a valid connection"); Dictionary.com, https://www.dictionary.com/browse/apply (defining "apply" to mean "to be pertinent, suitable, or relevant").

With respect to paragraph (B)(3), although that paragraph states that the TDC excess policy follows the form of all the underlying policies, it also states the coverage provided by the TDC excess policy is no broader than the terms and conditions of the most restrictive underlying policy.  Thus, as a practical matter, if a claim is not covered under the terms and conditions of the most restrictive underlying policy, it is not covered by the TDC excess policy—unless the TDC excess policy "expressly" provides otherwise.  Here, the terms and conditions of the

10

TDC primary policy are more restrictive than the terms and conditions of the Endurance 2017-18 excess policy because the latter provides coverage of Plaintiff's claim whereas the former does not,[6] and nothing in the TDC excess policy "expressly" provides broader coverage than the TDC primary policy.

On the latter point, the Court did not overlook Plaintiff's argument that Endorsement No. 4 provides broader coverage than the TDC primary policy. However, the Court finds that argument unpersuasive because, as discussed below, even though Endorsement No. 4 states that the TDC excess policy follows the form of the Renewal Agreement Endorsement to the Endurance 2017-18 excess policy, the exception to the Known Losses exclusion referenced in the Renewal Endorsement Agreement does not provide coverage for Plaintiff's claim under the TDC excess policy because that policy is not a "renewal" policy. Thus, at least for the 2017-18 policy period, the Known Losses exclusion refenced in the Renewal Agreement Endorsement has the same effect on Plaintiff's claim as the exclusions in the TDC primary policy.

---

[6] Plaintiff's claim was covered under the Endurance 2017-18 excess policy because that policy was a renewal of the Endurance 2016-17 excess policy and the Known Losses provision of the 2017-18 policy provided coverage for claims (like Plaintiff's) that were known during the 2016-17 policy period but not reported until the 2017-18 policy period. *See* Doc. 21-4 at 13-14, 54. By contrast, the TDC primary policy expressly excluded coverage for claims that were reported during the policy period but were known to the insured before the policy's inception date and/or reported to another insurer under a policy in effect prior to inception date of the TDC primary policy. *See* Doc. 21-3 at 24-25.

Accordingly, Plaintiff's claim is not covered under the TDC policy because the conditions in paragraphs (A) and (B)(3) of the Insuring Agreement are not met.

Endorsement No. 4

Endorsement No. 4 to the TDC excess policy effectively incorporates by reference the Renewal Agreement Endorsement to the Endurance 2017-18 excess policy. Thus, the question of whether Endorsement No. 4 obligates TDC to provide coverage for Plaintiff's claims turns on the proper interpretation of the Renewal Agreement Endorsement.

TDC argues that the Renewal Agreement Endorsement simply obligated Endurance and TDC to renew their excess policies for the 2018-19 policy period and that it did not impose additional coverage obligations on TDC for the 2017-18 policy period. The Court agrees.

The Renewal Agreement Endorsement states in pertinent part that "it is agreed that the Company will renew, and the **Named Insured** will accept … this policy as of 4/15/18 subject to the conditions set forth below. Doc. 21-4 at 54 (bold in original). The only condition in the endorsement that has any potential relevance to TDC's coverage obligation for Plaintiff's claim is the statement that "[r]enewal of the insurance does not affect the applicability of Exclusion P. Known Losses." *Id.*

The Court fails to see how the reference to the Known Losses provision in the Endurance 2017-18 excess policy has any bearing on TDC's coverage obligation for

12

Plaintiff's claim. The Known Losses provision generally excludes coverage for known claims predating the inception date of the policy, but it provides an exception where the policy is "renewal" of a previously issued policy and there has been continuous, uninterrupted coverage for the period between the inception date of the previous policy and the inception date of the renewal policy. In those circumstances, the Known Losses exclusion will not apply to claims that were known during the previous policy period but not reported until the renewal policy period.

The effect of that provision on Endurance is that its 2017-18 excess policy covered claims that were known to Andrews during the 2016-17 policy period but not reported until the 2017-18 policy period because the 2017-18 policy was effectively a renewal of the 2016-17 policy.[7] That provision does not have a similar effect on the TDC excess policy because that policy was not a renewal of a policy that previously issued by TDC[8] because the pleadings establish that TDC did not

---

[7] The Court did not overlook Plaintiff's argument that Endurance's 2017-18 excess policy was not a "renewal" of its 2016-17 excess policy because the latter provided $25 million in coverage and the former only provided $15 million in coverage. However, if Endurance's 2017-18 policy was not a "renewal" of its 2016-17 policy, then Plaintiff's claim would not have been covered by the 2017-18 policy (and Plaintiff should not have recovered $15 million of the settlement from Endurance) because the exception to the Known Losses exclusion would not have applied and coverage under the 2017-18 policy would have been excluded under that provision.

[8] The plain language of the exception to the Known Losses exclusion states that the exception is only triggered "[i]f this Policy is a renewal of an agreement previously issued by us," Doc. 21-4 at 14 (emphasis added), and when that provision is effectively incorporated by reference into the TDC policy (through Endorsement No. 4 and the Renewal Agreement Endorsement), the term "us" necessarily means TDC.

provide excess (or any) coverage to Baptist or Andrews for the 2016-17 policy period.

Accordingly, Endorsement No. 4 to the TDC excess policy does provide coverage for Plaintiff's claim.

## Conclusion

In sum, for the reasons stated above, the Court finds that TDC is entitled to judgment on the pleadings because Plaintiff's claim is not covered under the TDC excess policy.[9]  Accordingly, it is **ORDERED** that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 61) is **DENIED**.

2. Defendant's cross-motion for judgment on the pleadings (Doc. 64) is **GRANTED**.

3. The Clerk shall enter judgment, stating: "Judgment on the pleadings is entered in favor of Defendant TDC Specialty Insurance Company (TDC).  Plaintiff shall take nothing from this action and TDC shall go hence without day."

4. The Clerk shall close the case file.

---

[9] This ruling, coupled with the dismissal of Plaintiff's claim against Endurance, does not leave Plaintiff without a remedy because he can now pursue his claims against the insurance brokers—and at least one of those claims appears to have merit. *See* Doc. 50 at 20 n.8 (noting the "if the allegations in the amended complaint are true, it appears that USI may have substantial exposure based on its failure to notify Endurance of a known potential claim [under the $25 million 2016-17 excess policy] at the same time that it notified Arch—particularly now that the claim against Endurance has been dismissed").

**DONE and ORDERED** this 27th day of November, 2023.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**